FILED

IN THE UNITED STATES DISTRICT COURT OF 8 PM 2: 44
THE MIDDLE DISTRICT OF FLORIDA
(ORLANDO DIVISION)   US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

ORANGE LAKE COUNTRY CLUB,
INC., a Florida corporation, and WILSON
RESORT FINANCE, L.L.C., a Florida
limited liability company

            Plaintiffs,

vs.

CASTLE LAW GROUP, P.C., a
Tennessee professional corporation,
JUDSON PHILLIPS, ESQ., an individual,
CASTLE MARKETING GROUP, LLC, a
Tennessee limited liability company,
CASTLE VENTURE GROUP, LLC, a
Tennessee limited liability company,
RESORT RELIEF, LLC, a Texas limited
liability company, WILLIAM MICHAEL
KEEVER, an individual, KEVIN
HANSON, an individual, and SEAN
AUSTIN, an individual

            Defendants.

_____/

CASE NO.: 6:17-CV-1044-ORL-31 DCI

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, ORANGE LAKE COUNTRY CLUB, INC., a Florida corporation

("OLCC"), and WILSON RESORT FINANCE, L.L.C., a Florida limited liability

company ("WRF") (together the "Plaintiffs"), file this Complaint against Defendants,

CASTLE LAW GROUP, P.C., a Tennessee professional corporation ("Castle Law"),

JUDSON PHILLIPS, ESQ. ("Phillips"), individually, CASTLE MARKETING GROUP,

LLC, a Tennessee limited liability company ("Castle Marketing"), CASTLE VENTURE GROUP, LLC, a Tennessee limited liability company ("Castle Venture"), WILLIAM MICHAEL KEEVER ("Keever"), individually, SEAN AUSTIN ("Austin"), individually, RESORT RELIEF, LLC, a Texas limited liability corporation ("Resort Relief"), and KEVIN HANSON ("Hanson"), individually, and state:

## PARTIES

1.      Plaintiff, OLCC, is a Florida corporation with its principal place of business at 8505 West Irlo Bronson Memorial Highway, Kissimmee, Florida 34747.

2.      Plaintiff, WRF, is a Florida limited liability company with its principal place of business at 8505 West Irlo Bronson Memorial Highway, Kissimmee, Florida 34747.

3.      Defendant, Castle Law, is a Tennessee professional corporation with its principal place of business at 2 International Plaza, Suite 900, Nashville, Tennessee 37217.

4.      Defendant, Phillips, is an individual who is believed to reside in Franklin, Williamson County, Tennessee.

5.      Defendant, Castle Marketing, is a Tennessee limited liability company with its principal place of business at 2 International Plaza, Suite 900, Nashville, Tennessee 37217.

6.      Defendant, Castle Venture, is a Tennessee limited liability company with its principal place of business at 2 International Plaza, Suite 900, Nashville, Tennessee 37217.

2

7.     Defendant, Keever, is an individual who is believed to reside in Mount Juliet, Wilson County, Tennessee.

8.     Defendant, Austin, is an individual who is believed to reside in Nashville, Davidson County, Tennessee.

9.     Defendant, Resort Relief, is a Texas limited liability company with its principal place of business located at 1110 North Loop 336 West, Suite 210, Conroe, Montgomery County, Texas 77301.

10.     Defendant, Hanson, is an individual who is believed to reside in Conroe, Montgomery County, Texas.

## JURISDICTION

11.     This Court has jurisdiction over this dispute by virtue of 28 U.S.C. § 1332 in that there is complete diversity of citizenship between Plaintiff and all Defendants in this matter and  the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

12.     This Court may exercise personal jurisdiction over all Defendants because this action arises out of and is related to Defendants' purposeful contacts with the State of Florida, including (i) the solicitation of Florida owners through the use of false and deceptive advertising, (ii) the intentional interference with contracts between OLCC, a Florida corporation, its affiliated companies in Florida, and Wilson Finance, a Florida limited liability corporation (collectively, "Orange Lake"), and Florida residents, and (iii) the intentional interference with advantageous business and contractual relationships between Orange Lake and Florida residents.   Specifically, Defendants solicited, via

3

postings on various websites and direct mailings, Florida residents who owned timeshare interests with Orange Lake (many of which are in Florida) ("Orange Lake Owners"). Through the false and deceptive advertisements, Defendants lure the timeshare owners to retain their services which underlie Orange Lake's claims for tortious interference with contracts, tortious interference with advantageous business relationships, and violations of Section 721.121, Florida Statutes.

13.     Defendants also executed agreements with Orange Lake Owners, many of whom are Florida residents. Defendants were to perform the contracts, in whole or in part, in Florida, in that they were to negotiate with Orange Lake to secure the release of any future obligations the Orange Lake Owners owed to Plaintiffs and the cancellation of the Orange Lake Owners' contracts with Orange Lake. To affect the cancellation, Defendants mailed letters to Orange Lake in Florida.

14.     In addition, Defendants' internet-based operations subject them to personal jurisdiction in the state of Florida. Defendants do not operate a passive advertising website; rather Defendants do business over the internet by entering into contracts with residents of Florida through the website, which involves the repeated transmission of computer files over the internet and allows Florida residents to exchange their contact information with a host computer.

15.     The Court's exercise of personal jurisdiction over Defendants will not violate traditional notions of fair play and substantial justice.

## VENUE

16.     Venue is proper in this judicial district because the events or omissions giving rise to the claims asserted in this complaint occurred within this judicial district.

## GENERAL ALLEGATIONS

### A.    The Timeshare Purchase

17.     Orange Lake is in the business of developing, financing, managing, and selling timeshare resort properties throughout the United States, including in Florida. Orange Lake has 13 timeshare resorts totaling approximately 3,395 individual timeshare units and is supported by nearly 3,000 employees.  There are currently over 100,000 Orange Lake timeshare owners worldwide.

18.     At the time of a timeshare purchase from Orange Lake, each purchaser executes a written Purchase Agreement.  Pursuant to the terms of the Purchase Agreement, in addition to purchasing the timeshare interest, each owner understands and agrees to be bound by the Declaration of Condominium ("Declaration") for the resort where the owner purchased the timeshare, and to be responsible for their share of common expenses, assessments, maintenance fees, and any and all other expenses incurred in the operation of their timeshare unit.  The Declaration is referenced and incorporated in the Purchase Agreement with the owners.

19.     If a purchaser desires mortgage financing, he or she may complete and submit a mortgage application as part of the Purchase Agreement; and upon approval of financing, a purchaser will execute and deliver a Promissory Note and Mortgage in connection with the timeshare purchase.  Both the Promissory Note and Mortgage are

referenced and incorporated in the Purchase Agreement with the owners. Wilson Finance is the lender and holder of the Promissory Note and Mortgage.

**B.   Historical Background of the Various Entities**

20.   Timeshare Advocacy International, LLC, was formed on August 4, 2009. The registered agent for Timeshare Advocacy from the date of formation to the date of dissolution, on August 6, 2016, was Austin. On February 20, 2013, the LLC was changed from a one member to a two member LLC. The second member being Kevin Eighmey.

21.   Castle Marketing Group, LLC, was initially formed on May 1, 2007. The sole member for the LLC was Keever. The principal address for Castle Marketing was 7100 Commerce Way, Suite 185, Brentwood, Tennessee 37027, Williamson County, Tennessee. It was administratively dissolved on August 22, 2008. On April 13, 2015, another LLC under the same name was formed. The sole member for this new LLC is Austin and the principal address is 2 International Plaza, Suite 900, Nashville, Tennessee 37217.

22.   Castle Venture Group, Inc., was formed on August 19, 2005. The principal office address was 7100 Commerce Way, Suite 185, Brentwood, Tennessee 37027. The Registered Agent for this corporation was Keever. This corporation was administratively dissolved on August 22, 2008. On March 5, 2015, an LLC under the name Castle Venture Group, LLC, was formed with four members. The address was listed as 1804 Williamson Court, Suite 108, Brentwood, Tennessee 37027. On March 17, 2016, Castle Venture filed with the Tennessee Secretary of State changing it from a four

6

member to a two member LLC.  Additionally, on April 27, 2017, the LLC filed with the Tennessee Secretary of State changing the address to 2 International Plaza, Suite 900, Nashville, Tennessee 37217.   Upon information and belief, the four members were Keever, Austin, Phillips, and Eighmey, and the two members were Keever and Austin.

23.     Judson Phillips Law, PC, was formed on September 16, 2014.   The principal address for Judson Phillips Law was 425 Church Street, Nashville, Tennessee 37219 and Judson Phillips Law was the registered agent.  On January 1, 2015, the name was changed to Castle Law Group, PC.  The address changed to 424 Church Street, Suite 2000, Nashville, Tennessee 37219 and the registered agent changed to Castle Law Group, PC.  On March 8, 2015, the address changed to 1804 Williamson Court, Suite 108, Brentwood, Tennessee 37027.   On August 23, 2016, the address changed to 2 International Plaza, Suite 900, Nashville, Tennessee 37217.

24.     Resort Relief, LLC, was formed in June 16, 2014.  Its sole member and "owner and founder" is Kevin S. Hanson.  *See* Exhibit "A."

C.     **Relationships Between The Defendants**

25.     Upon information and belief, in early 2015, Keever, Judson, and Austin, incorporated Castle Marketing, Castle Venture, and Castle Law to solicit timeshare owners using false and misleading advertising with the purpose of tortious interference with Orange Lake's existing contracts and advantageous business relationships with its owners.

26.     Even though Castle Venture's website claims that it is a capital investment company with the purpose of funding startup companies, and Castle Marketing's website

7

claims that it is a marketing company, according to the Better Business Bureau's website, Castle Venture Group, LLC's, and Castle Marketing Group, LLC's, main business is "Timeshare Advocates." *See* Exhibits "B," and "C," respectively.

27.    Upon information and belief, Keever and Austin are the masterminds behind the overall scheme. *See e.g.* Exhibit "D," article written by Carly Vaughn, writer for Castle Marketing, stating that Keever, as CEO of Castle Ventures, was joining forces with Phillips to form Castle Law Group to help hundreds of timeshare owners. Additionally, even though Phillips is the purported owner of Castle Law, the true owner is the CEO of Castle Law, Keever.

28.    Upon information and belief, the overall scheme is for Austin and Keever, under the guise of Castle Venture, to fund Castle Marketing, to run marketing campaigns to solicit timeshare owners through fraudulent and deceptive means. *See e.g.* Exhibit "E," a posting on Castle Venture's website stating, "Castle Venture built a close investment and business relationship with Castle Marketing Group as a way to provide sales and marketing services to other businesses in their investment portfolio. Castle Marketing now provides the sales, marketing, and processing services for one of the largest law firms in the country and is Castle Venture's *most successful investment.*" [Emphasis added.] *See also* Exhibit "F," a posting on Castle Marketing's website stating, "CMG holds the exclusive sales and marketing agreement with a national law firm with thousands of clients." The "national law firm" referenced to in both Castle Venture and Castle Marketing's website is Castle Law.    Castle Marketing performs all marketing services for Castle Law.

8

29.     The marketing campaign directs unsuspected timeshare owners to Castle Law.

30.     Additionally, Resort Relief, through fraudulent and deceptive advertising, along with direct calls, induces timeshare owners to retain its and Castle Law's services. While Hanson purports to be the owner and founder of Resort Relief, upon information and belief, the true owner is Austin. *See e.g.,* Exhibit "G," the FAQ information published on Resort Relief's website stating: (1) "Many companies claim to have helped thousands and to have been in business for many years, but the fact is, ***Sean Austin*** has been in business the longest" [emphasis added]; (2) "Simply put, *TAI* is the longest company with a great track record. *TAI* has been the model for many copycat companies, but they all are missing one thing. Actual cancellations! Once you do your research and read through our website, all your questions should be answered" [emphasis added]; (3) "*TAI* would love to state that we have a 100 percent success rate like other companies do. We are successful over 93 percent of the time. In the cases that we have not been successful, clients get 100 percent of their money returned to them"; and (4) "Because we have been doing this successfully since January of 2009 *TAI* knows which timeshare companies and which areas of misrepresentation have the most success."

31.     Once the timeshare owners contact Castle Law, Castle Law's non-attorney employees then convince the owners to default on their Notes.

**D.** **Defendants' Scheme To Solicit Timeshare Owners Through The Use Of False And Misleading Advertising**

32.   Defendants engage in a scheme whereby they specifically seek out and solicit timeshare owners who own a timeshare interest with Orange Lake and have an existing purchase agreement and loan in favor of Orange Lake.

33.   Defendants' business model consists of soliciting timeshare owners from all over the country including Orange Lake Owners through Castle Law's websites, www.timesharecancellation.com and castlelawtn.com, and through various postings on websites such as www.prweb.com, www.insidethegate.com, http://thetimeshareattorney.com, http://timeshareadvocacy.weebly.com/about-us.html, and http://resortrelief.weebly.com/about-us.html; through advertisements purchased via Google; and through relationships with various timeshare relief affiliates such as Resort Relief.

34.   In order to induce Orange Lake Owners to retain Castle Law's legal services, Castle Law, through the marketing services of Castle Marketing and Resort Relief, advertise Castle Law as a "timeshare relief firm" and guarantee timeshare owners relief of their timeshare obligations within one (1) year or eighteen (18) months from the date they sign a retainer agreement with Castle Law. *See e.g.,* Exhibit "H," a posting on Castle Law's website in which Phillips guaranties "a full and total removal of the timeshare with a settlement agreement that covers your consumer credit and proper tax treatment" and Exhibit "G," a posting on Resort Relief's website stating "a 100 percent money back guarantee certificate for an added sense of security."

Case 6:17-cv-01044-GAP-DCI   Document 1   Filed 06/08/17   Page 11 of 31 PageID 11

*Orange Lake Country Club, Inc. vs. Castle Law Group, P.C., et al.*
Complaint for Damages and Injunctive Relief

35.     Castle Law also claims that "Castle is widely considered the leader in timeshare law" and lists a variety of timeshare developers such as "Wyndham, Diamond, Bluegreen, Westgate, Silverleaf, Starwood, and Marriott" as entities Castle Law has been able to successfully defend against in timeshare matters. *See* Exhibit "I," a posting on Castle Law's website. *See also,* Exhibit "J," a posting on Resort Relief's website containing the exact same language. In fact, Castle Law has struggled to cancel its clients' contracts.

36.     Additionally, Castle Law claims that it has "helped from across the country" "6000+" timeshare owners and that "[a] conservative estimate of the money we've saved our clients" is "Millions of Dollars." *See* Exhibit "K," a posting on Castle Law's Website.

37.     The postings from the various websites strongly suggest that Defendants can obtain the same result for other timeshare owners, regardless of whether there is any legitimate legal basis for the cancellation, because – as the Castle Law Group's website states, "[n]o matter your reason for wanting to get rid of your timeshare, Castle Law Group can help." *See* Exhibit "L." The website places no real emphasis on legal grounds which would warrant the cancellation of a timeshare interest.

38.     Resources posted on Castle Law's website such as "HOW TO GET RID OF A TIMESHARE" purports to list "Different Methods" to get rid of your timeshare but provides nothing more than a "pro" and "con" comparison between using Castle Law versus "Non-Attorney Advocacy Groups." *See* Exhibit "M." According to this resource, "[m]any people believe there is no way to get rid of a timeshare and the rising

11

maintenance fees, high interest timeshare mortgage, and inability to book vacations" and proceeds to provide a list of four "pros" in hiring "TIMESHARE LAWYERS & LEGAL TIMESHARE CANCELLATION," which is "the best and safest way to get rid of a timeshare." *Id.* The "pros" include: (1) "Timeshare attorneys are trained and licensed to represent you and give you legal advice"; (2) "A law firm can negotiate directly with the timeshare developer and their legal team to make demands on your behalf. The following outline will help you make an informed choice on the best method for you to get rid of a timeshare"; (3) "The lawyers and legal support staff will handle your case from start to finish, leaving you to enjoy your life and stop stressing about your timeshare"; and (4) "Timeshares attorneys can negotiate a FULL and FINAL settlement agreement that completely cancels your timeshare contract AND timeshare debt." *Id.*

39.   Defendants generate, divert, and lure Orange Lake Owners to their website by utilizing banner advertisements which contain a hyperlink leading directly to their website. These banner advertisements are strategically placed in online articles regarding timeshares, and which the Orange Lake Owners are likely to come across, openly stating: "Client Testimonials, Timeshare Litigation, The Timeshare Problem, Cancel Now." *See* Exhibit "N."

40.   In order to further entice Orange Lake Owners in Florida to retain Castle Law, it posts the Florida Bar Board Certified logo under its attorneys' biographies, Judson Phillips and Christopher Butler. See Exhibit "O." Incredulously, neither Phillips nor Butler are members of the Florida Bar. *See* Exhibits "P" and "Q," respectively.

12

41.     Castle Law also engages a California-based marketing company called Aston Business Solutions or Aston Marketing Group, to send postcards to Florida residents via direct mail, advertising timeshare relief services.  These postcards are made to appear as if they are coming directly from Castle Law.  Castle Law allowed the marketing company to sell its services as authorized representatives of Castle Marketing.

42.     Resort Relief, through deceptive and fraudulent advertisements, and through cold calls, induces timeshare owners to retain its services.  As part of its overall scheme, Resort Relief would have its non-attorney consultants contact the timeshare owners to "evaluate your situation and discuss your options to legally cancel your timeshare contract."  *See* Exhibit "R," pamphlet given by Resort Relief to potential consumers.

43.     Once the Resort Relief non-attorney consultant determines that the potential client is "eligible" for its services, the consultant provides the potential client with an engagement agreement, attached as Exhibit "S."  The engagement agreement is for the purposes of engaging the services of Castle Law.

44.     The engagement agreement contains numerous contradictory statements such as "Client understands and agrees that *no services will be performed* and the Agreement will not be valid until the Fee has been paid and this Agreement has been signed and returned to the Firm. *Any fee Client pays to the Firm is being paid for work completed.*" [Emphasis added.] *See* Exhibit "S."

45.     Although no services will be performed by any attorney at Castle Law prior to the client paying the retainer fee, Resort Relief outlines a detailed "cancellation

13

process" comprising of: (1) Castle Law sending a "cease and desist" letter to the timeshare developer within the first week of retention, and within the second week of retention, its attorneys will send letters to the three credit bureaus disputing any related derogatory marks and "a legal demand letter with legally enforced deadline . . . Your timeshare developer will have up to 90 days to respond to this demand letter. Please be patient during the important part of the process." *See* Exhibit "R." The letters referenced to in the pamphlet are forms letters containing the same allegations and demands for every client and crafted prior to Castle Law even retaining the potential client or performing any review of the individual client's case. *See e.g.* Exhibits "T" and "U."

46.     Between 2015 and 2016, Defendants' elaborate fraudulent and deceptive marketing campaign culminated in an average of about three hundred (300) clients per month for Castle Law.

**E.     Defendants' Encouragement Of The Orange Lake Owners To Immediately Default On All Payment Obligations Related To Their Timeshare Interest**

47.     In order to entice Orange Lake Owners to sign the retainer agreement with Castle Law, its non-lawyer employees were encouraged to convey to potential clients the "pros and cons" of continued payment to Orange Lake in a manner that would encourage the Orange Lake Owners to stop making payments of fees and costs per the Purchase Agreement and their Notes. Castle Law incentivized its non-lawyer employees by paying them a percentage of fees obtained from the clients. The employees would make statements such as, every payment you make to them is like saying thank you for lying to me and here, take my hard earned money; and, if you were in charge at the timeshare company and you had two stacks of requests from people who wanted out of their

timeshare on your desk, and one stack kept sending you money every month and the other one had stopped paying, which stack would you let out of the contract first?

48.     Castle Law reasoned that the clients' default would make it easier for Castle Law to convince timeshare developers to cancel the timeshare owners' accounts and accept a deed back of the timeshare interest.

49.     Once the timeshare owners agree to hire Castle Law and pay the amount requested, usually between $2,500 and $6,000 (but it could be higher depending on the maximum amount Castle Law's employees are able to talk the client into) Castle Law would enter into an attorney-client relationship with the Orange Lake Owners to provide legal advice regarding means by which the Orange Lake Owners may breach their legally binding contracts.

50.     After obtaining an Orange Lake Owner as its client, Castle Law sends timeshare developers such as Orange Lake form letters containing Castle Law's letterhead.  Other than these form letters, the legal team generally took no legal action other than perhaps to give clients "updates" on their cases when they called asking questions and to stall the clients to buy time to get the clients out of their timeshare contract before the one (1) year or eighteen (18) month timeframe guaranty contained in the engagement agreement expired.  *See e.g.,* Exhibit "T," initial letter of representation from Castle Law informing the developer that it "may only contact our firm in writing at the above address.  **Correspondences sent to our office should be limited to your response to our correspondence to you and your interactions.  Invoices, notices, invitations, and the like should continue to go to the Client(s)."**

15

*Orange Lake Country Club, Inc. vs. Castle Law Group, P.C., et al.*
Complaint for Damages and Injunctive Relief

F.   **Castle Law's Continued Deceptive Conduct After Retaining The Clients**

51.   Castle Law separates its timeshare clients into two categories, litigation and non-litigation. At or around the timeframe of 2015-2016, Castle Law had four attorneys working for it. The attorneys never talked to the non-litigation clients and had no meaningful involvement in any of the non-litigation cases.

52.   In order to qualify as a litigation client, the timeshare owners must have paid a timeshare developer a minimum of $40,000, were seeking to rescind the contract within the applicable statute of limitations, paid a retainer fee of $7,500 up front, and agreed to a 33 1/3% contingency fee. However, despite meeting all of the requirements for litigation clients and paying the retainer fee, lawsuits were never filed for some of these clients. According to the retainer agreement, attached as Exhibit "S," the decision to litigate is "at the Firm's sole discretion."

53.   At the time the Castle Law consults with the Orange Lake Owners, charge the retainer fee, sign the engagement agreement, and send the demand letters or file the complaints, Defendants knew that the Orange Lake Owners have an enforceable contractual relationship with Orange Lake.

54.   The Defendants are fully aware that the Orange Lake Owners can't afford to terminate their contractual relationship due to financial reasons so instead, Defendants convince the Orange Lake Owners, through Castle Law, to make false statements and/or allegations against Orange Lake. *See e.g.,* Exhibit "V," printout from Castle Law's website listing as a type of person with whom Castle Law can assist is "Timeshare owners that can't afford their timeshare anymore."

16

55.     In many instances, after the one (1) year or eighteen (18) month guaranty time period expired, Castle Law would inform clients that their timeshare contracts have been rescinded and that Castle Law was waiting for paperwork from the developer to finalize the matter. This was not the case. Castle Law was largely unsuccessful in its efforts to get the developers to cancel the contracts and take the weeks back.

56.     Upon information and belief, but for Defendants' representations and advice to cancel their contractual obligations with Orange Lake, Orange Lake Owners would not have sought to cancel their contractual obligations with Orange Lake.

57.     Upon information and belief, most, if not all, of the Orange Lake Owners who have employed Castle Law wish to terminate their contracts with Orange Lake because they can no longer afford their obligations, not because of any alleged wrongdoing by Orange Lake. Indeed, most of these Orange Lake Owners never complained to Orange Lake about their contracts prior to Orange Lake receiving the form letters from Castle Law.

58.     Shortly after Castle Law send their form letters to Orange Lake, most, if not all, of the Orange Lake Owners stop paying their contractual obligations to Orange Lake.

59.     Defendants intentionally and unjustifiably interfered with Orange Lake's contractual and advantageous business relationships with the Orange Lake Owners by advising them to terminate their contractual relationships without any valid grounds, in exchange for a fee and the false assurance that there will be no liability because Castle Law is involved.

17

60.     Orange Lake has not engaged in any behavior which would justify the cancellation of any of the contractual obligations by the Orange Lake Owners.

61.     As a direct and proximate result of Defendants' intentional and unjustified interference with Orange Lake's contractual relationships with the Orange Lake Owners, Orange Lake has been damaged.

62.     All conditions precedent to the filing of this action have been satisfied, waived, or have occurred.

63.     Plaintiffs have retained the law firm of Greenspoon Marder, P.A. to represent it in this action and is obligated to pay reasonable attorney's fees and costs incurred herein.

## COUNT I
## (TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS)

64.     Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 63 above as if more fully set forth herein.

65.     This is a cause of action for tortious interference with existing contracts and for damages in excess of $75,000.00, exclusive of interest, attorney's fees and costs, and is within this Court's jurisdiction.

66.     Plaintiffs valid and legally enforceable contracts with Orange Lake Owners of their timeshare units.

67.     Defendants have knowledge of those relationships.  The very fact that Plaintiffs' owners have a business relationship is the basis under which Defendants sought to establish a relationship with the Orange Lake Owners.

18

68.     Defendants solicit the Orange Lake Owners with the intention of inducing or causing them to breach their contracts with Orange Lake.

69.     Defendants' willful actions to help parties with whom Orange Lake has valid contractual agreements breach their agreements constitute intentional interference with existing contracts.

70.     Defendants have intentionally and without justification or privilege interfered with Plaintiff's existing contracts by convincing Orange Lake Owners to immediately stop making any further payments under their contracts without any legal basis.

71.     Defendants' actions were not made in good faith, but rather were made with the knowledge and purpose to injure Plaintiff or with reckless disregard for the attendant consequences naturally, directly, and proximately resulting from Defendants' actions and without reasonable grounds for Defendants to believe that their actions were justified and proper.

72.     As a direct and proximate result of Defendants' intentional misconduct, the Orange Lake Owners have terminated, or have sought to terminate, their contractual relationship with Plaintiffs before the expiration of the terms of those contracts.

73.     Defendants did not have any justification or privilege in procuring the breach of such contracts.

74.     As a direct and proximate result of the foregoing, Plaintiff suffered damages.

75.    **WHEREFORE**, Plaintiffs, ORANGE LAKE COUNTRY CLUB, INC., and WILSON RESORT FINANCE, L.L.C., respectfully demand judgment in their favor and against Defendants, CASTLE LAW GROUP, P.C., CASTLE MARKETING GROUP, LLC, CASTLE VENTURE GROUP, LLC, RESORT RELIEF, LLC, JUDSON PHILLIPS, MICHAEL KEEVER, KEVIN HANSON and SEAN AUSTIN, and request compensatory damages, special damages, interest, attorneys' fees and costs, and such additional and further relief this Court deems just and proper.

## COUNT II
### (TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS)

76.    Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 63 above as if more fully set forth herein.

77.    This is a cause of action for tortious interference with advantageous business relationships and for damages in excess of $75,000.00, exclusive of interest, attorney's fees and costs, and is within this Court's jurisdiction.

78.    Plaintiffs have advantageous business relationships with the Orange Lake Owners.

79.    Defendants have knowledge of those relationships.  The very fact that Plaintiffs' owners have a business relationship is the basis under which Defendants sought to establish a relationship with the Orange Lake Owners.

80.    Defendants have successfully solicited Orange Lake Owners wishing to terminate their contracts with Orange Lake.

20

81.     As stated above, Defendants have intentionally and without justification interfered with Plaintiffs' relationships by convincing Orange Lake Owners to immediately stop making any further payments under their contracts without any legal basis.

82.     Defendants' actions were not made in good faith, but rather were made with the knowledge and purpose to injure Plaintiffs or with reckless disregard for the attendant consequences naturally, directly, and proximately resulting from Defendants' actions and without reasonable grounds for Defendants to believe that their actions were justified and proper.

83.     As a direct and proximate result of Defendants' intentional misconduct, the Orange Lake Owners have terminated, or have sought to terminate, their contractual relationship with Plaintiffs before the expiration of the terms of those contracts.

84.     Defendants did not have any justification or privilege in procuring the breach of such business relationships.

85.     As a direct and proximate result of the foregoing, Plaintiffs suffered damages.

**WHEREFORE,** Plaintiffs, ORANGE LAKE COUNTRY CLUB, INC., and WILSON RESORT FINANCE, L.L.C., respectfully demand judgment in their favor and against Defendants, CASTLE LAW GROUP, P.C., CASTLE MARKETING GROUP, LLC, CASTLE VENTURE GROUP, LLC, RESORT RELIEF, LLC, JUDSON PHILLIPS, MICHAEL KEEVER, KEVIN HANSON and SEAN AUSTIN, and request

compensatory damages, special damages, interest, attorneys' fees and costs, and such additional and further relief this Court deems just and proper.

## COUNT III
## (CIVIL CONSPIRACY)

86.     Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 63 above as if more fully set forth herein.

87.     This is a cause of action for civil conspiracy to commit tortious interference with advantageous business relationships and for damages in excess of $75,000.00, exclusive of interest, attorney's fees and costs, and is within this Court's jurisdiction.

88.     Defendants Judson, Keever, Hanson and Austin are parties to a civil conspiracy.

89.     Defendants Judson, Keever, Hanson and Austin conspired to do an unlawful act.

90.     Defendants Judson, Keever, Hanson and Austin conspired to interfere with Orange Lake's advantageous business and contractual relationship with the Orange Lake Owners.

91.     Defendants Judson, Keever, Hanson and Austin each performed one or more overt actions in furtherance of their conspiracy, including without limitation:

> a.     Judson, as the purported owner of and attorney for Castle Law, and Keever, as the true owner of Castle Law, encouraged Orange Lake Owners to breach their contracts with Orange Lake even though they had no legal basis;

22

b.     Austin, acting through Castle Marketing, effectuated a deceptive and fraudulent marketing scheme to solicit timeshare owners to retain the services of Castle Law;

c.     Hanson, acting through Resort Relief, effectuated a deceptive and fraudulent marketing scheme to solicit timeshare owners to retain the services of Castle Law; and

d.     Austin and Keever, as owners of Castle Ventures, funded the whole fraudulent enterprise.

92.     As a direct and proximate result of Defendants' civil conspiracy, the Orange Lake Owners have terminated, or have sought to terminate, their contractual relationship with Plaintiffs before the expiration of the terms of those contracts.

93.     Defendants did not have any justification or privilege in procuring the breach of such business relationships.

94.     As a direct and proximate result of the foregoing, Plaintiffs suffered damages.

**WHEREFORE**, Plaintiffs, ORANGE LAKE COUNTRY CLUB, INC., and WILSON RESORT FINANCE, L.L.C., respectfully demand judgment in their favor and against Defendants, CASTLE LAW GROUP, P.C., CASTLE MARKETING GROUP, LLC, CASTLE VENTURE GROUP, LLC, RESORT RELIEF, LLC, JUDSON PHILLIPS, MICHAEL KEEVER, KEVIN HANSON, and SEAN AUSTIN, and request compensatory damages, special damages, interest, attorneys' fees and costs, and such additional and further relief this Court deems just and proper.

23

## COUNT IV
## (VIOLATION OF SECTION 721.121, FLORIDA STATUTES)

95.     Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 63 above as if more fully set forth herein.

96.     This is an action for a violation of Section 721.121, Florida Statutes.

97.     Based on the activities conducted by Resort Relief, Hanson, and Austin, they are acting as a lead dealer, as defined by Chapter 721, Florida Statutes.

98.     Section 721.05(42), Florida Statutes defines a lead dealer as: "any person who sells or otherwise provides a resale service provider or any other person with personal contact information for five or more owners of timeshare interests. In the event a lead dealer is not a natural person, the term shall also include the natural person providing personal contact information to a resale service provider or other person on behalf of the lead dealer entity."

99.     Resort Relief and Hanson compile timeshare owners' personal contact information and provide it to Castle Law. Castle Law purports to represent Resort Relief's "consumers" who have retained the services of Resort Relief to cancel their timeshare contracts.

100.    Upon information and belief, Resort Relief, Hanson, and Austin offer timeshare interest transfer services in violation of Chapter 721, by, among other things, procuring Orange Lake's customers' cancellations based on false or misleading information, offering or engaging in such services for consideration without complying with the escrow requirements, failing to timely obtain an agreement that complies with

24

Chapter 721, Florida Statutes, and failing to maintain records as required under Chapter 721, Florida Statutes.

101.    Also, under Section 721.121(1), Florida Statutes, Resort Relief, Hanson, and Austin are required to maintain certain records, for a five (5) year period, relating to a customer's personal contact information.   Upon information and belief, Resort Relief, Hanson, and Austin failed to do so.

102.    Upon information and belief, Resort Relief, Hanson, and Austin wrongfully obtained or wrongfully used personal contact information with respect to owners of a timeshare plan in violation of Section 721.121(2), Florida Statutes.

103.    As a result of Resort Relief, Hanson, and Austin's conduct, Plaintiffs been damaged.

104.    Moreover, Resort Relief, Hanson, and Austin's ongoing conduct has caused and, if not permanently enjoined, will continue to cause irreparable harm Plaintiffs in their trade and business.

105.    Monetary damages are not solely sufficient to remedy the statutory violation, and therefore, Plaintiffs further request a permanent injunction prohibiting Resort Relief, Hanson, and Austin from continuing to obtain or use the wrongfully obtained owner information, and in connection therewith, to destroy any wrongfully obtained information in their possession.

**WHEREFORE**, Plaintiffs, ORANGE LAKE COUNTRY CLUB, INC., and WILSON RESORT FINANCE, L.L.C., respectfully request that a permanent injunction be entered against Resort Relief, Hanson, and Austin, prohibiting them from continuing

to obtain or use wrongfully obtained owner information, and in connection therewith, requiring them to destroy any wrongfully obtained owner information in their possession, as well as, judgment in Plaintiffs favor and against Resort Relief, Hanson, and Austin, for monetary damages, including statutory damages in the amount of $1,000 for each owner about whom personal contact information was wrongfully obtained or used, attorney's fees under Section 721,121(3), Florida Statutes, and costs, pre- and post-judgment interest, and for such other relief as this Court deems just and proper.

## COUNT V
## (VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §501.201, *et seq.*)

106.    Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 63 above as if more fully set forth herein.

107.    This is a cause of action for violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq.* ("FDUTPA"), against Defendants, including unconscionable acts and practices and unfair and deceptive practices in the conduct of trade or commerce.

108.    Defendants are engaged in "trade or commerce" as defined by Fla. Stat. §501.203(8).

109.    Defendants have engaged in the following unconscionable, unfair, and deceptive acts or practices by:

      a.    soliciting Orange Lake Owners through false and misleading advertising and marketing materials which deceive Orange Lake

26

Owners into believing that they may unilaterally cancel their timeshare interest without any legal basis or reason whatsoever;

b. misleading Orange Lake Owners into believing that Castle Law may legally represent them in Florida courts and have extensive experience by including a Florida Bar Board Certified logo underneath its attorneys' biography;

c. convincing Orange Lake Owners to immediately stop making any payments toward their timeshare interests when, admittedly, Defendants have not reviewed the proper documents or made any determination as to whether any valid legal grounds exist for the cancellation; and

d. misrepresenting to clients that the timeshare matter has been resolved even though it was not or that litigation was instituted even though no legal action was taken.

110.    Plaintiffs have suffered substantial harm as a direct and proximate cause of Defendants' deceptive, misleading, and unfair practices.

111.    Defendants' unconscionable and deceptive acts and practices are likely to continue and will cause damage to Plaintiffs because they are currently soliciting Plaintiffs' timeshare owners through false and misleading advertisements and convincing them to immediately terminate their contractual obligations with Plaintiffs. Additionally, they have lulled Orange Lakes Owners into a sense of complacency by informing them

27

that Plaintiffs have rescinded the timeshare contracts, leading to continued breach by the Orange Lakes Owners.

112.    Pursuant to Fla. Stat. §§501.211(2) and 501.2105, Plaintiffs are entitled to damages, attorney's fees, and costs.

113.    Plaintiffs reserve the right to seek punitive damages under Florida law.

**WHEREFORE**, Plaintiffs, ORANGE LAKE COUNTRY CLUB, INC., and WILSON RESORT FINANCE, L.L.C., respectfully demand judgment in their favor and against Defendants, CASTLE LAW GROUP, P.C., CASTLE MARKETING GROUP, LLC, CASTLE VENTURES, LLC, RESORT RELIEF, LLC, JUDSON PHILLIPS, MICHAEL KEEVER, KEVIN HANSON, and SEAN AUSTIN, and request compensatory damages, special damages, punitive damages, interest, attorneys' fees and costs, and such additional and further relief this Court deems just and proper.

## COUNT VI
### (TEMPORARY AND PERMANENT INJUNCTIVE RELIEF)

114.    Plaintiffs reallege and reincorporate the allegations contained in paragraphs 1 through 63 above as if more fully set forth herein.

115.    This is a cause of action for temporary and permanent injunctive relief and is within this Court's jurisdiction.

116.    Defendants' solicitation of Orange Lake Owners using false and misleading advertising and their subsequent instruction to immediately terminate the Orange Lake Owners' contracts with Plaintiffs is harming Plaintiffs and constitutes tortious interference with Plaintiffs' existing contractual and advantageous business relationships.

28

117.    Defendants have engaged, continue to engage, and/or intend to further engage in the conduct described above.

118.    Defendants' actions present an immediate threat of irreparable harm to Plaintiffs, and Plaintiffs will suffer irreparable harm if Defendants, and their agents, affiliated companies or entities, representatives and employees, are not enjoined from this conduct.

119.    The threat of irreparable harm is continuing because Defendants currently engage in an ongoing business whereby they solicit Orange Lake Owners using the false and misleading advertising outlined above; and then convince the Orange Lake Owners to immediately stop paying all mortgage, maintenance, and tax payments associated with their timeshares, regardless of whether any valid legal basis exists for the cancellation.

120.    Plaintiffs have no adequate remedy at law as damages will not address the harm Plaintiffs will suffer if Defendants are permitted to continue with this activity. Plaintiffs will have imminently thousands of dollars in delinquent mortgage, maintenance and tax payments payments owed to them and will be forced to expend monies foreclosing on the timeshares to recoup these monies to no end as Defendants refuse to cease and desist from this tortious conduct.

121.    There is a substantial likelihood that Plaintiffs will prevail on the merits of their claims against Defendants.

122.    The injury and potential harm caused by Defendants' intentional inference with Plaintiffs' advantageous business relationships outweigh the harm, if any, that an injunction would cause to Defendants.

123.   The issuance of the requested injunction will serve the public interest by protecting Plaintiffs' legitimate business interests and their timeshare owners, and by restraining the disruptive and tortious actions committed by Defendants.

**WHEREFORE**, Plaintiffs, ORANGE LAKE COUNTRY CLUB, INC., and WILSON RESORT FINANCE, L.L.C., demand a temporary and permanent injunction be entered against Defendants, CASTLE LAW GROUP, P.C., CASTLE MARKETING GROUP, LLC, CASTLE VENTURES, LLC, RESORT RELIEF, LLC, JUDSON PHILLIPS, MICHAEL KEEVER, KEVIN HANSON and SEAN AUSTIN, and their agents, representatives, employees, affiliates, and any others acting in concert or participating with Defendants and prohibiting Defendants from: (1) publishing false and misleading misrepresentations on their website or in any other electronic or print media or materials regarding Plaintiffs' owners' cancellation of their timeshare interest without any legal basis; and (2) contacting and/or otherwise interfering with Plaintiffs' contractual and business relationships with their owners. Plaintiffs further seek an award of as well their costs and attorney's fees pursuant to Fla. Stat. §501.211 and for all other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, ORANGE LAKE COUNTRY CLUB, INC., and WILSON RESORT FINANCE, LLC, demand a trial by jury to all issues so triable.

DATED this 8th day of June, 2017.

Respectfully submitted,

By: ___*/s/ Jeffrey Backman*_____
RICHARD W. EPSTEIN

(Trial Counsel)
Florida Bar No. 229091
JEFFREY BACKMAN
Florida Bar No. 662501
THU PHAM
Florida Bar No. 106586
GREENSPOON MARDER LAW
201 East Pine St, Suite 500
Orlando, Florida 32801
Telephone:     (407) 425-6559
Facsimile:     (407) 209-3152
Jeffrey.Backman@gmlaw.com
Khia.Joseph@gmlaw.com
Thu.Pham@gmlaw.com
Karen.Leigh@gmlaw.com

ACTIVE: 30851371.1-38080.0028