UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ORANGE LAKE COUNTRY CLUB, INC.
and WILSON RESORT FINANCE,
L.L.C.,**

        **Plaintiffs,**

v.                                              Case No:   6:17-cv-1044-Orl-31DCI

**CASTLE LAW GROUP, P.C., JUDSON
PHILLIPS ESQ, CASTLE MARKETING
GROUP, LLC, CASTLE VENTURE
GROUP, LLC, RESORT RELIEF, LLC,
WILLIAM MICHAEL KEEVER, KEVIN
HANSON and SEAN AUSTIN,**

        **Defendants.**

## ORDER

This matter comes before the Court on the Motion to Dismiss Second Amended Complaint (Doc. 62) filed by Defendant Sean Austin (henceforth, "Austin") and the response in opposition (Doc. 69) filed by the Plaintiffs, Orange Lake Country Club, Inc. ("Orange Lake") and Wilson Resort Finance, L.L.C. ( "Wilson Finance").

    **I.**    **Background**

According to the allegations of the Second Amended Complaint (Doc. 60), which are accepted in pertinent part as true for purposes of resolving the instant motion, Orange Lake develops, sells and manages timeshare properties, including some in Florida, and Wilson Finance provides mortgage financing for some of the purchasers of those properties. (Doc. 60 at 5-6). Individuals who buy timeshare interests from Orange Lake (henceforth, "Orange Lake Owners") enter into purchase agreements. (Doc. 60 at 6). Under those purchase agreements, in addition to

the original purchase price, Orange Lake Owners are obligated to pay a share of their timeshare development's ongoing maintenance fees, assessments, and other expenses.   (Doc. 60 at 6).

Defendant Castle Venture Group, LLC ("Castle Venture") funds Defendant Castle Marketing Group, LLC ("Castle Marketing").   (Doc. 60 at 8).   Along with Defendant Resort Relief, LLC ("Resort Relief"), Castle Marketing solicits timeshare owners, including the Orange Lake Owners, who wish to get out of their obligations under their purchase agreements.   Such owners are directed to retain Defendant Castle Law.[1]   As one step in the process of getting out of their purchase agreements, Orange Lake Owners who retain Castle Law are encouraged to breach those agreements by refusing to make any more payments to Orange Lake.   (Doc. 60 at 14-15).

The instant case was filed on June 8, 2017.   (Doc. 1).   On September 21, 2017, the Plaintiffs filed their Second Amended Complaint (Doc. 60), which consists of six counts: tortious interference with existing contracts (Count I); tortious interference with advantageous business relationships (Count II); civil conspiracy (Count III); violation of Section 721.121, Florida Statutes (Count IV); violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count V); and temporary and permanent injunctive relief (Count VI).   The statutory claim in Count IV is asserted against Resort Relief, Hansen and Austin.   The remaining counts are asserted against all of the Defendants.

By way of the instant motion, Austin seeks dismissal of all six counts.

---

[1] The four individual defendants in this matter are associated with the four business entity (P.C./LLC) defendants.   Defendant Judson Phillips is the sole owner of Castle Law; Defendant Sean Austin is the sole member of Castle Marketing; Defendant William Keever is the sole member of Castle Venture; and Defendant Kevin Hanson is the sole member of Resort Relief.   (Doc. 60 at 2-3).

**II.     Legal Standards**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).   A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir.1984).   In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff.   *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988).   The Court must also limit its consideration to the pleadings and any exhibits attached thereto.   Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ*., 495 F.3d 1289, 1302 (11th Cir. 2007).   Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.   *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.   A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. at 1949 (internal citations and quotations omitted).   "[W]here the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged –
but it has not 'show[n]' – 'that the plaintiff is entitled to relief.'"  *Id.* at 1950 (quoting Fed. R.
Civ. P. 8(a)(2)).

**III.    Analysis**

Simultaneously with the entry of this order, the Court has entered an order (Doc. 83) resolving a motion to dismiss filed by two of Austin's co-defendants – Castle Law Group, P.C., and Judson Phillips.   With one exception, Austin makes the same arguments in his motion as were made by his co-defendants in theirs, leading to the same results.   Accordingly, for the reasons set forth in that order, Counts II, V, and VI will also be dismissed without prejudice as to Austin.

The exception involves Count IV, which the Plaintiffs did not assert against Castle Law and Phillips.   In Count IV, the Plaintiffs allege that Resort Relief, Hanson, and Austin violated a recordkeeping obligation under Florida's Vacation Plan and Timesharing Act ("FVPTA"), Fla. Stat. §§ 721.02-721.98.   The Plaintiffs allege that Austin is a "lead dealer," which is defined by the FVPTA in pertinent part as

> any person who sells or otherwise provides a resale service provider
> or any other person with personal contact information for five or
> more owners of timeshare interests.   In the event a lead dealer is not
> a natural person, the term shall also include the natural person
> providing personal contact information to a resale service provider
> or other person on behalf of the lead dealer entity.

Fla. Stat. § 721.05(42).   The Act defines "personal contact information" as

> any information that can be used to contact the owner of a specific
> timeshare interest, including, but not limited to, the owner's name,
> address, telephone number, and e-mail address.

Fla. Stat. § 721.05(43).   The Act requires that lead dealers maintain the following records for five years after obtaining personal contact information:

> (a) The name, home address, work address, home telephone number, work telephone number, and cellular telephone number of the lead dealer from which the personal contact information was obtained.
>
> (b) A copy of a current government-issued photographic identification for the lead dealer from which the personal contact information was obtained, such as a driver license, passport, or military identification card.
>
> (c) The date, time, and place of the transaction at which the personal contact information was obtained, along with the amount of consideration paid and a signed receipt from the lead dealer or copy of a canceled check.
>
> (d) A copy of all pieces of personal contact information obtained in the exact form and media in which they were received.
>
> (e) If personal contact information was directly researched and assembled by the resale service provider or lead dealer and not obtained from another lead dealer, a complete written description of the sources from which personal contact information was obtained, the methodologies used for researching and assembling it, the items set forth in paragraphs (a) and (b) for the individuals who performed the work, and the date such work was done.

Fla. Stat. § 721.121(1).

Any use by a lead dealer of personal contact information that was wrongfully obtained is to be considered "wrongful use" by that entity. Fla. Stat. § 721.121(3). In any civil action relating to the wrongful possession or wrongful use of personal contact information by a resale service provider or lead dealer, any failure to produce the records required by Section 721.121 results in a presumption that the personal contact information was wrongfully obtained. Fla. Stat. § 721.121(2). Any party who establishes that personal contact information was wrongfully obtained or used "with respect to owners of a timeshare plan or members of an exchange program" can recover $1,000 for each owner whose information was wrongfully obtained or used. Fla. Stat. § 721.121(3).[2]

---

[2] It is not clear (a) that the instant case can properly be considered a "civil action relating

- 5 -

Austin argues that there are no factual allegations in the Second Amended Complaint that show him to be a "lead dealer" and therefore subject to the recordkeeping requirements of Section 721.121. (Doc. 62 at 8). As to this argument, Austin is correct. The Plaintiffs allege that Austin is the "true owner" of Resort Relief. (Doc. 60 at 9)  They also allege that Resort Relief compiles timeshare owners' personal contact information and provides it to Castle Law. (Doc. 60 at 26).  But the Plaintiffs never assert that Austin himself ever provided personal contact information to anyone, either individually or on behalf of Resort Relief, so as to qualify as a lead dealer.[3] Count IV will therefore be dismissed as to Austin.

**IV. Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss filed by Defendant Sean Austin (Doc. 62) is **GRANTED IN PART AND DENIED IN PART** as set forth above. Counts II, IV, V, and VI are **DISMISSED WITHOUT PREJUDICE** as to Defendant Austin. In all other respects, the

---

to the wrongful possession or wrongful use of personal contact information" so as to make Austin's recordkeeping a matter of judicial concern, or (b) that, if so, the Plaintiffs are the proper bring this type of claim. Neither side has addressed these issues in their briefs, and there are very few published opinions dealing with this section of the FVPTA. For purposes of resolving the instant motion, the Court will assume without deciding that the Plaintiffs can properly bring such a claim here.

[3] Austin also argues that the Plaintiffs did not state a claim because there are no factual allegations that he failed to keep proper records. However, the Plaintiffs allege on information and belief that Resort Relief, Hanson, and Austin failed to maintain records as required under Fla. Stat. § 721.121. (Doc. 60 at 26). Pleading based on information and belief sometimes requires supporting factual allegations, such as in fraud cases where the information at issue is "peculiarly within the defendant's knowledge or control." *Hill v. Morehouse Medical Associates, Inc.*, No. 02-14429, 2003 WL 22019936, at *4 (11th Cir. Aug. 15, 2003). In other cases, however, pleading based on information and belief is generally permitted. 5 Charles Alan Wright et al., *Federal Practice & Procedure* § 1224 (3d ed.).

motion is **DENIED**.   If the Plaintiffs wish to file an amended pleading, they must do so on or before December 27, 2017.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on December 15, 2017.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party