# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ORANGE LAKE COUNTRY CLUB, INC.
and WILSON RESORT FINANCE,
L.L.C.,

        **Plaintiffs,**

v.                                 **Case No:  6:17-cv-1044-Orl-31DCI**

CASTLE LAW GROUP, P.C., JUDSON
PHILLIPS ESQ, CASTLE MARKETING
GROUP, LLC, CASTLE VENTURE
GROUP, LLC, RESORT RELIEF, LLC,
WILLIAM MICHAEL KEEVER, KEVIN
HANSON and SEAN AUSTIN,

        **Defendants.**

_____

## ORDER

This matter comes before the Court without a hearing on the motions to dismiss filed by

the following Defendants: Sean Austin (Doc. 99); Castle Law Group, P.C. ("Castle Law") and

Judson Phillips ("Phillips") (Doc. 103); and Resort Relief, LLC ( "Resort Relief") and Kevin

Hanson ("Hanson") (Doc. 106).   In resolving the motions, the Court has considered the omnibus

response in opposition (Doc. 112) filed by the Plaintiffs, Orange Lake Country Club, Inc.

("Orange Lake") and Wilson Resort Finance, LLC ("Wilson Finance").

### I.       Background

The instant case involves a dispute between entities involved in selling timeshares and a

group that promises to help timeshare owners get out of their contracts.   According to the

allegations of the Third Amended Complaint (Doc. 91) (henceforth, "TAC"), which are accepted

in pertinent part as true for the purpose of resolving the instant motions, Orange Lake develops

and sells timeshare properties throughout the United States, including Florida. (TAC at 5). Individuals who buy timeshares from Orange Lake (henceforth, "Orange Lake Owners") sometimes obtain financing through Wilson Finance. (TAC at 6). The Plaintiffs allege that Defendant Castle Venture Group, LLC ("Castle Venture") funds Defendant Castle Marketing Group, LLC ("Castle Marketing"), which (along with Resort Relief) solicits timeshare owners, directing them to retain Castle Law. (TAC at 4). According to the records of these various entities, Austin is the sole member of Castle Marketing (TAC at 6-7); Defendant William Keever ("Keever") and Austin are the members of Castle Venture (TAC at 7); Hanson is the sole member of Resort Relief (TAC at 8); and Phillips, a lawyer, is associated with Castle Law (TAC at 7).

When they buy their timeshares, Orange Lake Owners enter into contacts in which they agree to certain ongoing obligations. Among other things, they agree to pay assessments, maintenance fees, and a portion of the common expenses for the entire development. (TAC at 5-6). According to the Plaintiffs, the Defendants are engaged in a scheme to swindle Orange Lake Owners by falsely promising to get them out of these contracts. (TAC at 17). The Plaintiffs contend that the Defendants use misleading advertising to solicit Orange Lake Owners, claiming a high likelihood of success, when in reality they are rarely successful. (TAC at 18). Further, the Plaintiffs contend, after Orange Lake Owners retain Castle Law, Castle Law advises them to breach their contracts with Orange Lake as a way of increasing the chance that Orange Lake will agree to let them out of their contracts. (TAC at 23-24).

The Plaintiffs filed the instant suit on June 8, 2017. (Doc. 1). In response to a motion to dismiss for lack of jurisdiction (Doc. 24), the Plaintiffs filed an amended complaint (Doc. 29) on August 7, 2017. After a second motion to dismiss on jurisdictional grounds[1] (Doc. 35), the

---

[1] Both motions sought dismissal on the grounds that the Plaintiffs had failed to properly

Plaintiffs filed a second amended complaint (Doc. 60) on September 21, 2017. On December 15, 2017, the Court granted in part motions to dismiss filed by Castle Law and Phillips (Doc. 61) and by Austin (Doc. 62). The Court denied the motions insofar as they sought dismissal of the Plaintiffs' tortious interference with contract and civil conspiracy claims, but granted the motions as to claims for tortious interference with advantageous business relationships, violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-501.23 ("FDUTPA"), violations of Florida's Vacation Plan and Timesharing Act, Fla. Stat. §§ 721.02-721.98 ("FVPTA"), and a standalone claim for injunctive relief. (Doc. 84 at 4-7).

On December 27, 2017, the Plaintiffs filed their Third Amended Complaint (Doc. 91). In addition to the claims for tortious interference with contract (Count I) and civil conspiracy (Count II), which survived from the previous pleading, the Plaintiffs again assert claims for violations of the FVPTA (Count III) and FDUTPA (Count IV). In addition, they assert claims under the Lanham Act, 15 U.S.C. 1125(a) (Counts V-VI) and for misleading advertising in violation of Fla. Stat. § 817.41 (Counts VII-VIII).

## II.    Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case.

---

plead the citizenship of one or more parties, a requirement for a Court to determine whether it possesses diversity jurisdiction over a dispute.

*Milburn v. United States*, 734 F.2d 762, 765 (11th Cir.1984).   In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff.   *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988).   The Court must also limit its consideration to the pleadings and any exhibits attached thereto.   Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007).   Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.   *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.   A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. at 1949 (internal citations and quotations omitted).   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the plaintiff is entitled to relief.'"   *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III.   Analysis

Before addressing the merits of the claims asserted against them, Castle Law and Phillips argue that the Third Amended Complaint falls short of the requirements of Fed.R.Civ.P. 8(a), which requires that such a pleading provide "a short and plain statement of the claim showing that

the pleader is entitled to relief."   They point out that the Third Amended Complaint is 68 pages long – twice as long as the Second Amended Complaint – with 238 numbered paragraphs.   The first 100 paragraphs are incorporated into each of the document's eight counts, despite the fact that many of them appear to have no relevance to at least some (if not all) of the claims asserted.   For example, roughly four pages are devoted to the formation of Castle Law Group by Keever, Austin, and Philips, even though that information appears to have no relevance to the question of whether any of the Defendants tortiously interfered with the Plaintiffs' contracts or violated the FVPTA. But while the latest pleading is unnecessarily lengthy and filled with redundancies, the Court finds it does not quite warrant dismissal as a shotgun pleading or for violation of Rule 8(a).

Castle Law and Phillips also argue that dismissal is required because some of the Plaintiffs' allegations in regard to allegedly false advertising are contradicted by some of the exhibits attached to the Third Amended Complaint.   (Doc. 103 at 5-7).   Without going through all of the examples, the Court notes that among other things the Plaintiffs allege, as false or misleading, communications from Castle Law in which it "guaranteed timeshare owners it would relieve them of their timeshare obligations within one year to eighteen months".   (Doc. 103 at 6). In its motion, Castle Law does not dispute having made this statement or the other examples attributed to it.   Instead, it cites to the standard engagement contract between itself and its clients – attached to the Third Amended Complaint as Exhibit S – which states that

> Client understands and agrees that there is no guaranteed result of the Firm's services or that Client will recover money or other property as a result of the Firm's engagement. Client understands and agrees that there is no way to determine the time frame in which the Client's case will be resolved and that there is no guarantee regarding the time required to resolve your Claims.

(Doc. 91-19 at 3).   However, a truthful disclosure is not necessarily sufficient to overcome the net impression caused by a misleading communication.   *See, e.g.*, *FTC v. World Patent Marketing*,

2017 WL 3508639, * 13 (S.D.Fla. Aug. 16, 2017).   Even if every Castle Law customer signed an engagement letter with the quoted language – something that cannot be determined at this stage of the proceedings – it would not necessarily require dismissal.

### A.  Count I – Tortious Interference and Count II – Civil Conspiracy

Austin contends that the surviving tortious interference claim should be dismissed because the Plaintiffs fail to identify any specific contracts with which the Defendants have allegedly interfered and fail to allege facts supporting the allegation that he, personally committed such interference.   (Doc. 99 at 2-6).   However, this claim survived the previous round of motions to dismiss, including one filed by Austin himself.   No party has pointed to any material change in the allegations of Count I or the law of tortious interference that would warrant reexamination of this claim.   The same holds true for the civil conspiracy claim asserted in Count II, which also survived the previous round of motions to dismiss.   The current motions will therefore be denied as to these two counts.

### B.  Count III – Violation of Fla. Stat. § 721.121

The Plaintiffs allege that Defendants Resort Relief, Hanson, Castle Marketing and Austin violated a recordkeeping obligation under Florida's Vacation Plan and Timesharing Act ("FVPTA"), Fla. Stat. §§ 721.02-721.98.   The Plaintiffs allege that these four Defendants were "lead dealers," which is defined by the FVPTA in pertinent part as

> any person who sells or otherwise provides a resale service provider or any other person with personal contact information for five or more owners of timeshare interests.   In the event a lead dealer is not a natural person, the term shall also include the natural person providing personal contact information to a resale service provider or other person on behalf of the lead dealer entity.

Fla. Stat. § 721.05(42).   The Act defines "personal contact information" as

> any information that can be used to contact the owner of a specific timeshare interest, including, but not limited to, the owner's name, address, telephone number, and e-mail address.

Fla. Stat. § 721.05(43). The Act requires that lead dealers maintain certain records for five years after obtaining personal contact information.[2] Fla. Stat. § 721.121(1).

The FVPTA also provides that any party who establishes that a lead dealer wrongfully obtained or used personal contact information is entitled to recover from the lead dealer "an amount equal to $1,000 for each owner about whom such personal contact information was wrongfully obtained or used," plus attorney's fees and costs. Fla. Stat. § 721.121(3). In this case, the Plaintiffs contend that Resort Relief and Hanson provided personal contact information of Orange Lake Owners to Castle Marketing and Austin, who then provided this personal contact information to Castle Law. (TAC at 35). They allege that this information was "wrongfully

---

[2] As set forth in Fla. Stat. § 721.121(1), those records are:

(a) The name, home address, work address, home telephone number, work telephone number, and cellular telephone number of the lead dealer from which the personal contact information was obtained.

(b) A copy of a current government-issued photographic identification for the lead dealer from which the personal contact information was obtained, such as a driver license, passport, or military identification card.

(c) The date, time, and place of the transaction at which the personal contact information was obtained, along with the amount of consideration paid and a signed receipt from the lead dealer or copy of a canceled check.

(d) A copy of all pieces of personal contact information obtained in the exact form and media in which they were received.

(e) If personal contact information was directly researched and assembled by the resale service provider or lead dealer and not obtained from another lead dealer, a complete written description of the sources from which personal contact information was obtained, the methodologies used for researching and assembling it, the items set forth in paragraphs (a) and (b) for the individuals who performed the work, and the date such work was done.

obtained" because it was a result of the Defendants' allegedly deceptive advertising.    (TAC at 35-36).

The Plaintiffs are not alleging that any personal contact information was misappropriated from them.    Without explicitly saying so, the Plaintiffs are alleging that the info was provided by the Orange Lake Owners themselves, who had been misled into thinking Castle Law could get them out of the timeshare contracts.  *Compare Vacation Club Services, Inc. v. Rodriguez*, 2010 WL 1645129 (M.D. Fla. Apr. 22, 2010) (suit involving FVPTA "wrongful obtaining" claim where plaintiff's former employee allegedly stole database of plaintiff's timeshare members, which was then used by another defendant to solicit timeshare members).[3]    Because the information at issue in the instant case was neither that of the Plaintiffs nor obtained from their possession, Resort Relief and Austin argue that the Plaintiffs lack standing to proceed under the FVPTA.

A statutory cause of action is presumed to extend only to plaintiffs whose interests fall within the zone of interests protected by the law invoked.  *Lexmark Intern., Inc. v. Static Control Components, Inc.*, --- U.S. ---, 134 S.Ct. 1377, 1388, 188 L.Ed.2d 392 (2014) (citing *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984).    Obviously, the portions of the FVPTA under which the Plaintiffs now seek to proceed – *i.e.*, the portions regulating the acquisition, retention, and use of timeshare owners' personal information – were intended by the Legislature to protect the privacy interests of those owners.    However, the Plaintiffs argue that by allowing for recovery by any "party" who establishes that personal information has been wrongfully obtained or used, the Florida Legislature demonstrated an intent to expand standing for such claims beyond just timeshare owners.    (Doc. 112 at 14-15).    They

---

[3] No party raised the issue of standing in *Vacation Club Services*.    *See id.*

also contend that they have an interest in protecting their timeshare owners "from being solicited by fraudulent timeshare relief outfits."   (Doc. 112 at 16).

The Court notes that both of the Plaintiffs' arguments are relevant only to the claim of wrongfully obtained information under Fla. Stat. § 721.121(3), not to the alleged violations of the recordkeeping obligation found in Fla. Stat. § 721.121(1).   Therefore, the Court finds that the Plaintiffs lack standing to pursue claims against the Defendants for any alleged failure to follow the requirements of Fla. Stat. § 721.121(1).   As for the $1,000-per-owner claims under Fla. Stat. § 721.121(3), the Plaintiffs' arguments are not persuasive.   The Legislature's use of the word "party" rather than, for example, "owner" in that subsection does suggest that recovery was not intended to be limited to the individuals whose information was misappropriated or misused.   But the Plaintiffs offer nothing to suggest that the Legislature intended to protect the interests of timeshare developers when it passed Fla. Stat. §721.121(3).   Accordingly, the Court finds that the Plaintiffs also lack standing to pursue claims under that provision of the FVPTA.   Count III will be dismissed with prejudice.

### C.    Count IV – FDUTPA

FDUTPA provides in pertinent part that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."   Fla. Stat. § 501.204(1).   A claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. *Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach County, Inc.*, 169 So. 3d 164, 167 (Fla. 4th DCA 2015).   In the Second Amended Complaint, the Plaintiffs alleged that the Defendants violated FDUTPA by (1) soliciting the Orange Lake Owners through ads that deceived them into thinking that they could unilaterally cancel their timeshare interests; (2) misrepresenting to the Orange Lake Owners that Castle Law could legally represent them in Florida courts; and (3) falsely

informing clients who were Orange Lake Owners that their timeshare matters had been resolved. (Doc. 60 at 28-29).   The Court found that the Plaintiffs had failed to state a claim because these alleged violations would have harmed the Orange Lake Owners, not the Plaintiffs.

In the Third Amended Complaint, the Plaintiffs repeat the second and third allegations described above – *i.e.,* the misrepresentations as to Castle Law's ability to represent timeshare owners in Florida courts and as to whether those owners' claims had been resolved.   As was the case previously, these acts would cause harm to the owners, not to the Plaintiffs, and do not assist the Plaintiffs in asserting an FDUTPA claim.

However, the Plaintiffs add new allegations.   After repeating their previous allegation about deceiving timeshare owners as to their ability to unilaterally cancel their contracts, the Plaintiffs allege that the Defendants' "advertising and marketing materials … falsely induce [timeshare owners] to stop making payments to Plaintiffs even though such payments are required by legally enforceable contracts to which the timeshare owners have no legal excuse or justification not to pay."   (TAC at 39-40).   Plaintiffs go on to allege that

> Defendants' false and fraudulent advertising and marketing, including online, falsely portray timeshare developers and associations, generally, and Plaintiffs specifically, as systematically engaging in fraudulent and deceptive conduct to market and sell timeshare interests. Having targeted Plaintiffs and intentionally and purposefully tarnished Plaintiffs' business reputations and images with their false advertising, Defendants then falsely portray themselves as saviors, claiming, among the numerous misrepresentations set forth above, to (1) have obtained relief for thousands of timeshare owners valued at millions of dollars, (2) have a success rate of 93%, and (3) guarantee a successful result within 1 year to 18 months.

(TAC at 40).

The Defendants make several arguments in favor of dismissal of this count.   They argue that dismissal is required because the Plaintiffs are neither (1) consumers nor (2) the Defendants' competitors.   But as the Court noted in its previous order, FDUTPA claims are not limited to

consumers; and the Defendants have not provided any basis for finding that competitors are the only parties aside from consumers that can bring FDUTPA claims.

Austin argues that the acts and practices he is alleged to have engaged in were not done "in the conduct of any trade or commerce" and therefore are not covered by FDUTPA. (Doc. 99 at 8-9). For purposes of FDUTPA, the term "trade or commerce" is defined as "the advertising, soliciting, providing, offering, or disturbing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8). The Plaintiffs never allege that Austin himself created any of the deceptive ads or directly convinced any Orange Lake Owner to stop making payments. However, according to the allegations of the Third Amended Complaint, Austin is one of the "masterminds" of the multifaceted deceptive advertising scheme described in Count IV. (TAC at 9). For present purposes, that is sufficient to state a claim against him.

Castle Law and Phillips argue that the Lanham Act claims asserted in Count IV and V must be dismissed, which would require dismissal of the FDUTPA claim. In support, they cite G*lobal Tech LED, LLC v. Hilumz Int'l Corp.*, Case No: 2:15-cv-553-FtM-29CM, 2016 WL 3059390 (M.D. Fla. May 31, 2016). It is true that, in that case, Judge Steele found that dismissal of the Defendant' Lanham Act counterclaim mandated dismissal of their FDUTPA and Florida unfair competition counterclaims as well, on the grounds that the legal test for all three claims were the same. *Id.* at *3. And it is also true that in this case, the Court finds, *infra,* that the Plaintiffs' Lanham Act claims are due to be dismissed. However, though the legal tests for FDUTPA and Lanham Act claims might be the same, the allegations in the Third Amended Complaint are different. In their Lanham Act claims, the Plaintiffs only argue that the Defendants' allegedly misleading advertising harmed their reputations; in the FDUTPA claim, in

addition to the alleged reputational harm, the Plaintiffs contend that the Defendants' "advertising and marketing materials … falsely induce [timeshare owners] to stop making payments to Plaintiffs." (TAC at 39-40).   As discussed below, the Court found that the Lanham Act counts failed to state a claim because the ads cited by the Plaintiffs could not have caused the reputational harm they allegedly suffered.   But the Defendants did not challenge the allegations in the FDUTPA count that their advertising and marketing materials could have resulted in a different injury – improper stopping of payments by Orange Lake Owners.   Thus, Count IV does not suffer the same causation problem as Counts V and VI, and the motion will be denied as to this count.

### D.    Count V – False Advertising under the Lanham Act

In Count V, the Plaintiffs allege that Castle Law and Resort Relief violated the Lanham Act, 15 U.S.C. § 1125(a).   The pertinent provision of the Lanham Act provides that

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which --
>
> …
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).   To state a claim for false advertising in violation of the Lanham Act, a plaintiff must show that

> (1) the … statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) [the plaintiff] has been, or likely will be, injured as a result of the false or misleading statement.

*Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 7978 F.3d 1248, 1277 (11th Cir. 2015)

(citing *Sovereign Military Hospitaller Order v. Fla. Priory of Knights Hospitallers*, 702 F.3d

1279, 1294 (11th Cir. 2012)).

In this count, the Plaintiffs allege that Castle Law and Resort Relief made the following

representations of fact – which they describe as "false or misleading" – in their advertising:

> a. Castle Law guarantees on its website that it will relieve timeshare owners of their timeshare obligations within one (1) year to eighteen (18) months from the date they sign up with Castle Law.
>
> b. Castle Law's website boasts it has saved its "6000+" customers "millions of dollars" defending against timeshare developers and expressly mentions Silverleaf.[4]
>
> c. Castle Law's website also claims that, regardless of whether there is any legitimate legal basis for the cancellation, "[n]o matter your reason for wanting to get rid of your timeshare, Castle Law Group can help."
>
> d. Resort Relief guarantees it will relieve timeshare owners of their timeshare obligations if Resort Relief is retained, promising "a 100 percent money back guarantee certificate for an added sense of security."
>
> e. Resort Relief claims on its website it has been the "model for many copycat companies, but they all are missing one thing. Actual cancellations," boasting a 93 percent success rate. In the cases "that we have not been successful, clients get 100 percent of their money returned to them[.]" Resort Relief's website expressly mentions Silverleaf as one of the developers against whom it has achieved success.

(TAC at 46-47). The Plaintiffs go on to assert that, by way of these five statements, Castle Law

and Resort Relief

> substantially injured Plaintiffs' business reputation by leading consumers and others in the trade to believe its false statements of

---

[4] Silverleaf Resorts, Inc. is a timeshare company acquired by Orange Lake in 2015. (TAC at 5).

>fact about its services and by falsely stating, inter alia, that Plaintiffs
>are engaged in unlawful or illegal conduct.

(TAC at 47).

As with the FVPTA claims asserted in Count II, these Defendants assert that the Plaintiffs lack statutory standing to proceed under the Lanham Act.   To come within the protected zone of interests and thereby possess statutory standing, a plaintiff in a suit for false advertising under Section 1125(a) "must allege an injury to a commercial interest in reputation or sales."   *Lexmark*, 134 S.Ct. at 1390.   In addition, the Lanham Act's cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute.   *Id.*

For purposes of the Lanham Act, "commercial advertising or promotion" includes (1) commercial speech (2) by a defendant who is in commercial competition with the plaintiff (3) for the purpose of influencing consumers to buy defendant's goods or services, and (4) that is disseminated sufficiently to the purchasing public to constitute "advertising" or "promotion" within that industry.   *Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017). Castle Law contends that the Lanham Act claims should be dismissed because the Defendants are not in competition with the Plaintiffs.   (Doc. 103 at 12-13).   However, claims under the Lanham Act are not limited to competitors.   *Lexmark*, 134 S.Ct. at 1392 ("To be sure, a plaintiff who does not compete with the defendant will often have a harder time establishing proximate causation. But a rule categorically prohibiting all suits by noncompetitors would read too much into the Act's reference to 'unfair competition' in [15 U.S.C.] § 1127.").

Austin argues that the Plaintiffs have failed to set forth their Lanham Act claims with enough specificity to satisfy Fed.R.Civ.P. 9(b).   (Doc. 99 at 11).   In support of his argument that such specificity is required, he cites to *Nutrition Distrib., LLC v. New Health Ventures, LLC*, 2017 WL 2547307 (S.D.Cal. June 13, 2017) (holding that heightened pleading standard applies to

Lanham Act claims that are grounded in fraud). Austin does not cite any cases from within this Circuit holding that the heightened pleading standard of Rule 9(b) applies to such claims, while several district courts within the Circuit have declined to apply that standard. *See Incarcerated Entertainment, LLC v. Warner Bros. Pictures*, 261 F.Supp.3d 1220, 1226-27 (M.D. Fla. 2017) (collecting cases). Consistent with the authority cited in *Incarcerated Entertainment*, the Court declines to impose a heightened pleading requirement.

Castle Law argues that the Plaintiffs have failed to state a claim because the harm they claim to have suffered – injury to their reputation caused by the Defendants "leading consumers and others in the trade to believe [their] false statements of fact about [their] services and by falsely stating, *inter alia*, that Plaintiffs are engaged in unlawful or illegal conduct" (TAC at 47) – could not have happened as a result of the allegedly false statements cited by the Plaintiffs. In this, Castle Law is correct. Misleading potential clients about Castle Law's success rate in getting timeshare owners out of their contracts does not harm the reputation of timeshare developers or lenders. And none of the cited advertising states that the Plaintiffs are engaged in unlawful or illegal conduct. Count V will therefore be dismissed without prejudice.

### E. Count VI – Contributory False Advertising under the Lanham Act

In Count VI, the Plaintiffs seek to hold Castle Venture and Castle Marketing, as well as the individual Defendants alleged to control those entities – *i.e.*, Keever and Austin – liable under the Lanham Act for contributing to the (allegedly) false advertising that was put at issue in Count V. (TAC at 49-55). The allegations as to misleading statements and resulting harm are the same in Count VI as they were in Count V. As such, the harm alleged could not have resulted from the statements at issue, and Count VI will also be dismissed without prejudice.

**F.** **Count VII – Misleading Advertising, Fla. Stat. § 817.41 and Count VIII – Contributory Misleading Advertising, Fla. Stat. § 817.41**

In their last two counts, the Plaintiffs allege that the same statements at issue in Counts V and VI also violated Section 817.41, Florida Statutes, which makes it unlawful for any person to make or disseminate (or cause to be made or disseminated) any misleading advertisement before the general public of the state (or any portion thereof).   A consumer party may state a claim under Fla. Stat. §817.41 by pleading

> that the party relied on some identifiable alleged misleading advertising plus, where appropriate, all of the other elements of the common law tort of fraud in the inducement, as follows: (a) the representor made a misrepresentation of a material fact; (b) the representor knew or should have known of the falsity of the statement; (c) the representor intended that the representation would induce another to rely and act on it; and (d) the plaintiff suffered injury in justifiable reliance on the representation.

*Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F.Supp.2d 1314, 1322 (M.D. Fla. 2007) (Conway, J.).   Obviously, the Plaintiffs in this case are not consumers and cannot allege that they relied on any of the Defendants' advertising.   Some courts – including the *Signaturelink* court – have held that

> when the party alleging misleading advertising is a competitor of the defendant in selling the goods and services to which the misleading advertisement relates, an allegation of competition is permitted to "stand-in" for the element of direct reliance that a consumer is obligated to plead.

*Id.*   The Plaintiffs attempt to bring themselves within the ambit of Fla. Stat. § 817.41 by alleging that they are competitors of Castle Law and Resort Relief, in that those two Defendants

> advertise to Plaintiffs' existing client base in order to persuade them to do business with Castle Law and Resort Relief instead of with Plaintiffs, and to divert monies due and owing to Plaintiffs instead to Castle Law and Resort Relief."

(TAC at 45).

This argument fails. The Plaintiffs are in the business of getting people into timeshares, while the Defendants are in the business of getting them out. Though their target audiences necessarily overlap, the Plaintiffs and Defendants are selling entirely different services. They are adversaries, not competitors.

As the Plaintiffs are neither consumers nor competitors with respect to the Defendants, Counts VII and VIII will be dismissed with prejudice.

**IV.    Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED** that the motions to dismiss (Doc. 103, 106, 109) are **GRANTED IN PART AND DENIED IN PART** as set forth above. Count III is dismissed with prejudice; Counts V and VI are dismissed without prejudice; and Counts VII and VIII are dismissed with prejudice. In all other respects, the motions are denied.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on March 29, 2018.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party