# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**ORANGE LAKE COUNTRY CLUB, INC. and WILSON RESORT FINANCE, L.L.C.,**

        **Plaintiffs,**

**v.**                                      **Case No:  6:17-cv-1044-Orl-31DCI**

**CASTLE LAW GROUP, P.C., JUDSON PHILLIPS ESQ, CASTLE MARKETING GROUP, LLC, CASTLE VENTURE GROUP, LLC, RESORT RELIEF, LLC and WILLIAM MICHAEL KEEVER,**

        **Defendants.**

---

## REPORT AND RECOMMENDATION

This cause comes before the Court for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **Plaintiffs' Renewed Motion for Entry of Default Final Judgment against Castle Marketing Group, LLC (Doc. 277)** |
| **FILED:** | **September 16, 2019** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part.**

## I.    Background

On June 8, 2017, Plaintiffs filed a complaint against Defendants alleging numerous causes of action stemming from what Plaintiffs describe as a campaign of false advertising meant to induce timeshare owners into breaching their timeshare agreements with Plaintiffs.  *See* Doc. 1. Since that time, Plaintiffs have filed several amended complaints, culminating in the Fourth

Amended Complaint that Plaintiffs filed on July 11, 2018.  Doc. 223 (the Complaint).  In the Complaint, Plaintiffs alleged five causes of action: (1) Tortious Interference with Existing Contracts; (2) Civil Conspiracy; (3) Violation of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA); (4) False Advertising and Unfair Competition Under the Lanham Act; and (5) Contributory False Advertising and Unfair Competition Under the Lanham Act.  Doc. 223.  Castle Marketing Group, LLC (Castle Marketing) is a named Defendant in Counts 1, 2, 3, and 5.  Resort Relief, LLC (Resort Relief) is a named Defendant in Counts 1 through 4.

To date, this case has been resolved as to all Defendants with the exception of Castle Marketing.  *See* Docs. 238; 251; 260; 261; 265; 276.  Castle Marketing is in default (Doc. 155; *see* Docs. 256, 257, 259) and Plaintiffs have filed a renewed motion for entry of default final judgment against Castle Marketing.  Doc. 277 (the Motion).

## II.     Standard of Review

The Federal Rules of Civil Procedure establish a two-step process for obtaining default judgment.  First, when a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Federal Rules of Civil Procedure, and that fact is made to appear by affidavit or otherwise, the Clerk enters default.  Fed. R. Civ. P. 55(a).  Second, after obtaining clerk's default, the plaintiff must move for default judgment.  Fed. R. Civ. P. 55(b).  Before entering default judgment, the court must ensure that it has jurisdiction over the claims and parties, and that the well-pled factual allegations of the complaint, which are assumed to be true, adequately state a claim for which relief may be granted.  *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[1]

---

[1] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). To state a plausible claim for relief, a plaintiff must go beyond merely pleading the "sheer possibility" of unlawful activity by a defendant and offer "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). If a plaintiff fails to meet this pleading standard, then the plaintiff will not be entitled to default judgment.

If the plaintiff is entitled to default judgment, then the court must consider whether the plaintiff is entitled to the relief requested in the motion for default judgment. If the plaintiff seeks damages, the plaintiff bears the burden of demonstrating entitlement to recover the amount of damages sought in the motion for default judgment. *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008). Unlike well-pled allegations of fact, allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages. *Id*. (citing *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999)). Therefore, even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters[.]" *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects a basis for an award of

damages).  Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a liquidated sum or one capable of mathematical calculation, the law requires the district court to hold an evidentiary hearing to fix the amount of damages.  *See Adolph Coors*, 777 F.2d at 1543-44. However, no hearing is needed "when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages."  *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *see also Wallace*, 247 F.R.D. at 681 ("a hearing is not necessary if sufficient evidence is submitted to support the request for damages").

### III.   Analysis

#### A.  Subject Matter Jurisdiction

Plaintiffs allege that the Court has diversity jurisdiction over this case.  Doc. 277 at 6.  A federal court has diversity jurisdiction over civil actions where there is complete diversity of citizenship among the opposing parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  28 U.S.C. § 1332(a).  Upon review of the Complaint, the undersigned finds that Plaintiffs have sufficiently demonstrated that the parties are completely diverse and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  Doc. 223 at 2-3.  Therefore, the undersigned finds that the Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

#### B.  Personal Jurisdiction

Plaintiffs allege that the Court has personal jurisdiction over Castle Marketing, a Tennessee Limited Liability Company whose sole member is a Tennessee citizen. *See* Doc. 223 at ¶¶ 5, 12-14. For a federal court to have personal jurisdiction over a nonresident defendant, the forum state's long-arm statute must reach the defendant and the defendant must have sufficient contacts with

the forum state such that exercising jurisdiction would not offend due process. *Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1350 (11th Cir. 2013).

### a. Long-Arm Statute

To determine whether Florida's long-arm statute reaches a nonresident defendant, a federal court in Florida must construe the statute according to state law. *Id*. at 1352. The statute provides both general jurisdiction (if the nonresident defendant engages in substantial and not isolated activity in Florida regardless of whether the claim arose in Florida) and specific jurisdiction (if the nonresident defendant's action upon which the claim is based occurred in Florida), including over a nonresident defendant who commits a tortious act in Florida that may be established by a communication into Florida that forms the basis for the claim. *See* Fla. Stat. § 48.193(1)(a)(2); *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002).

Here, Plaintiffs allege that specific personal jurisdiction exists regarding all claims because Castle Marketing's tortious actions were directed at people in Florida. Doc. 223 at 12-14, 70.[2] Plaintiffs specifically allege that Castle Marketing solicited Florida residents via the internet and direct mailings. *Id.* Plaintiffs, who are based in Florida, also allege that Castle Marketing's conduct caused Plaintiffs injury in Florida. Doc. 223 at ¶¶ 1-2, 12, 18, 128, 145-46, 193. Based on the well-pled allegations, the undersigned finds that the Court has specific personal jurisdiction over Castle Marketing under Florida's long-arm statute. *See Wyndham Vacation Ownership, Inc. v. Montgomery Law Firm, LLC*, No. 6:18-CV-2121-ORL-37-LRH, 2019 WL 5394186, at *4

---

[2] In the Motion, Plaintiffs clarify that these allegations "encompass Castle Marketing's conduct with both timeshare owners located in Florida (i.e. Florida residents) whose timeshare interests are located in Florida and elsewhere in the United States, as well as non-Florida residents who own timeshare interests located in Florida." Doc. 277 at 6 (citing Doc. 223 at ¶12-14, 70).

(M.D. Fla. Aug. 8, 2019) (finding that the plaintiffs satisfied Florida's long-arm statute based upon similar facts).

Additionally, the undersigned finds that Castle Marketing's status as a co-conspirator also places Castle Marketing within the scope of Florida's long-arm statute.  As the Eleventh Circuit has explained:

> Florida courts have held that the state's long-arm statute can support personal jurisdiction over any alleged conspirator where any other co-conspirator commits an act in Florida in furtherance of the conspiracy, even if the defendant over whom personal jurisdiction is sought individually committed no act in, or had no relevant contact with, Florida.

*United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1281–82 (11th Cir. 2009); *see also Wilcox v. Stout*, 637 So. 2d 335, 337 (Fla. Dist. Ct. App. 1994) ("if [plaintiff] has successfully alleged that any member of that conspiracy committed tortious acts in Florida in furtherance of that conspiracy, then all of the conspirators are subject to the jurisdiction of the state of Florida through its long-arm statute").  Here, the Court has already found, by virtue of default, that Defendant Resort Relief engaged in a conspiracy with Defendants – including Castle Marketing – to tortiously interfere with Plaintiffs' contractual relationships.  *See* Doc. 275 at 7-8; Doc. 276.  Plaintiffs successfully alleged that Resort Relief committed tortious acts in Florida in furtherance of that conspiracy (*see id*); as an alleged co-conspirator (*see* Doc. 223 at ¶¶ 119-128), Castle Marketing is therefore subject to Florida's jurisdiction through its long-arm statute.

### b. Due Process

The requisite minimum contacts to satisfy due process are not built into Florida's long-arm statute.  *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 500 (Fla. 1989).  In a specific personal jurisdiction case, a court still must examine whether the plaintiff's claim arises out of or relates to the nonresident defendant's contacts with the forum state (the Relatedness Prong), whether the nonresident defendant purposefully availed itself of the privilege of conducting activities in the

- 6 -

forum state (the Purposeful Availment Prong), and whether exercising jurisdiction comports with traditional notions of fair play and substantial justice (the Fair Play Prong). *Louis Vuitton*, 736 F.3d at 1355; *see also Wyndham. v. Montgomery*, 2019 WL 5394186, at *5-7.

First is the Relatedness Prong. The Relatedness Prong concerns whether a "plaintiff's claim ... arise[s] out of or relate[s] to at least one of defendant's contacts with the forum." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222 (11th Cir. 2009) (internal quotations omitted). This inquiry focuses on "the direct causal relationship among the defendant, the forum, and the litigation." *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (internal quotations and citation omitted). Plaintiffs allege that their claims arise out of Castle Marketing's purposeful actions directed at Florida, including communication into Florida whereby Castle Marketing enters into agreements with Florida residents, some of which relate to property within Florida. Doc. 223 at ¶¶ 12-14. Based on the well-pled allegations, the undersigned finds that Plaintiffs have satisfied the Relatedness Prong.

Next is the Purposeful Availment Prong. For claims involving intentional torts there are two applicable tests to assess whether Plaintiffs satisfied this prong: (1) the "effects" test as described in *Calder v. Jones*, 465 U.S. 783 (1984); or (2) the traditional purposeful availment test. *See Louis Vuitton*, 736 F.3d at 1356–57. Under the effects test, the nonresident defendant's tort must have been: "(1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Lovelady*, 544 F.3d at 1286. Under the effects test, a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state. *See id.* at 1285.

Plaintiffs' well-pled allegations establish a claim for tortious interference, which is an intentional tort, so the first requirement of the effects test is satisfied. *See* Doc. 223 ¶¶ 102–118. Next, simply aiming conduct at Plaintiffs who reside in Florida cannot establish the second requirement of the effects test. *See Walden v. Flores*, 571 U.S. 277 (2014). But Plaintiffs allege that Castle Marketing's conduct rises above that level – Plaintiffs allege that Castle Marketing sent direct mailings to and solicited Florida residents, mailed letters to Plaintiffs in Florida, and entered into contracts with owners of timeshare interests located in Florida. Doc. 223 at ¶¶ 12-14. Given that conduct, the undersigned finds that Castle Marketing should have anticipated that any resulting injuries would occur in Florida, where Plaintiffs are located. *See Calder*, 465 U.S. at 789-90. Therefore, based on the well-pled allegations, the undersigned finds that Plaintiffs have satisfied the Purposeful Availment Prong under the effects test.

Last is the Fair Play Prong. The factors, as applied here, are: (1) the burden on Defendants; (2) Florida's interest in adjudicating the dispute; (3) Plaintiffs' interest in obtaining convenient and effective relief; (4) the judicial system's interest in resolving disputes in the most efficient way; and (5) the shared interest of the states in furthering fundamental substantive social policies. *Sloss v. Indus. Corp. v. Eurisol*, 488 F.3d 922, 933 (11th Cir. 2007) (citations omitted).

Applying these factors, the undersigned finds that exercising jurisdiction here would not violate traditional notions of fair play and substantial justice. "Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." *Lovelady*, 544 F.3d at 1288. Florida has an interest in resolving the dispute because the communication allegedly harmed Florida residents. Doc. 223 at ¶¶ 1-2, 12, 18, 128, 145-46, 193. Plaintiffs have an interest in obtaining relief in Florida, where their alleged injuries occurred. *See id.*; *see also Lovelady*, 544 F.3d at 1288 (finding that a "plaintiff, injured by the

intentional misconduct of a nonresident expressly aimed at the Florida plaintiff, is not required to travel to the nonresident's state of resident to obtain a remedy").  Last, the undersigned sees no reason the interests of the judicial system or shared interest of the states would be harmed by adjudicating this dispute.  Based on the well-pled allegations, the undersigned finds Plaintiffs have satisfied the Fair Play Prong.  Accordingly, the undersigned finds that this Court has specific personal jurisdiction over Castle Marketing and that such jurisdiction does not violate due process.

### C. Default

On December 6, 2017, the Court denied Plaintiffs' initial motion for entry of Clerk's Default against Castle Marketing.  *See* Doc. 78.  The Court found the proof of service upon a "manager" at Castle Marketing – "John Doe" –  insufficient.  *Id.*  On February 23, 2018, Plaintiffs filed a second motion for Clerk's Default against Castle Marketing.  Doc. 139.  Therein, Plaintiffs asserted that they had properly served Castle Marketing under Tennessee law.  *Id.*[3]  On March 3, 2018, the Court held a hearing to address several motions then pending in this case, including Plaintiffs second motion for Clerk's Default.  *See* Doc. 159.  On the record at the hearing, the Court found that Plaintiffs properly served Castle Marketing under Tennessee law and thus properly served Castle Marketing under the Federal Rules.  *See* Tenn. R. Civ. P. 4.04(3), (10), (11); Fed. R. Civ. P. 4(h)(1) (referencing Fed. R. Civ. P. 4(e)(1)).  Thus, Castle Marketing had 21 days from the date of service to respond to the Complaint.  Fed. R. Civ. P. 12(a)(1)(A)(i).  Castle

---

[3] Plaintiffs averred that on January 19, 2018, Plaintiffs sent the original Alias Summons (Doc. 81) and copies of the Second Amended Complaint (Doc. 60) and Third Amended Complaint (Doc. 91) by certified mail return receipt to Castle Marketing c/o Sean Austin, Castle Marketing's registered agent, at his personal residence in Mt. Juliet, Tennessee.  *See* Doc. 139 at 2; Doc. 139-1.  Plaintiffs also stated that on January 22, 2018 and January 23, 2018, "delivery of the envelope containing the above-referenced materials was refused by the recipient. . . ."  Doc. 139 at 2; *see* Docs. 139-2; 139-3.  Plaintiffs asserted that service was thus proper under Tennessee law.  *See* Tenn. R. Civ. P. 4.04

Marketing has not responded, and the time for doing so has elapsed.  On March 13, 2018, the Clerk entered default against Castle Marketing.  Doc. 155.  The undersigned finds that the Clerk properly entered default.[4]

### D.  Liability

#### a.  Count 1 – Tortious Interference with Existing Contracts

Under Florida law, the tort of contractual interference occurs when (1) a contract exists; (2) a third party has knowledge of the contract; (3) the third party intentionally interferes with a party's rights under the contract; (4) there is no justification or privilege for the interference; and (5) there are damages.  Doc. 83 at 4 (citing *Mariscotti v. Merco Group At Akoya, Inc.*, 917 So. 2d 890, 892 (Fla. 3d DCA 2005)).  Plaintiffs argue that the well-pled factual allegations in the Complaint establish that Castle Marketing tortiously interfered with their existing contracts.  Doc. 277 at 13.  The undersigned agrees.

In the Complaint, Plaintiffs allege that they have valid and legally enforceable contracts with their clients related to Plaintiffs' timeshare units, and that Castle Marketing had knowledge of these contracts.  Doc. 223 at ¶¶ 104-05.  Plaintiffs also allege that Castle Marketing, through false and misleading advertising – both individually and through its supervision and approval of marketing conducted by third parties, such as Resort Relief – fraudulently induced the Orange

---

[4] Under the Federal Rules of Civil Procedure, Plaintiffs were not required to serve the now-operative Fourth Amended Complaint upon Castle Marketing "[n]o service is required on a party who is in default for failing to appear," unless the new "pleading . . . asserts a new claim for relief against such a party . . . ." Fed. R. Civ. P. 5(a)(2).  The Fourth Amended Complaint asserts no new claims for relief against Castle Marketing that were not asserted in the Third Amended Complaint. *See* Doc. 257; *compare* Doc. 257-1 *with* Doc. 257-2 (both asserting claims for tortious interference with existing contracts (Count I in both); civil conspiracy (Count II in both); violations of the Florida Deceptive and Unfair Trade Practices Act (Count IV in the Third Amended Complaint, Count III in the Fourth Amended Complaint); and violations of the Lanham Act (Count VI in the Third Amended Complaint, Count V in the Fourth Amended Complaint)).  Thus, Castle Marketing is in default for the claims asserted in the Fourth Amended Complaint.

Lake Owners to cease making payments to Plaintiffs or to otherwise to breach their contractual obligations to Plaintiffs.  *Id.* at ¶¶ 29-31, 106-118.

Plaintiffs also allege that Castle Marketing, both individually and through Resort Relief, intentionally used false and misleading advertising to induce Plaintiffs' clients into paying large upfront fees to retain Castle Law Group, P.C. (Castle Law) for the purpose of exiting their timeshare agreements with Plaintiffs.  *Id*. at ¶¶ 70, 26, 30, 42-46, 61-63, 66-67, 69, 71-77, 79-81, 88-89, 93, 95-97, 106-18.  For instance, Plaintiffs allege that Castle Marketing stated on its website that "[Castle Marketing] holds the exclusive sales and marketing agreement with a national law firm with thousands of clients."  *Id.* at ¶ 42.  Plaintiffs allege that Castle Marketing, to fraudulently legitimize its business, concealed that its own principal is a primary actor behind the "national law firm" Castle Marketing points to as evidence of its success.  *Id.*

Further, Plaintiffs allege that in its efforts to get Plaintiffs' clients released from their timeshare contracts, Castle Law, without prior investigation or any legitimate grounds for doing so, instructed Plaintiffs' clients to stop making their mortgage, maintenance, and tax payments owed to Plaintiffs.  *Id*. at ¶¶ 46, 81, 97.  Plaintiffs allege that as a result of Castle Marketing's actions, Plaintiffs' clients have terminated, or have sought to terminate, their contractual relationships with Plaintiffs, thereby damaging Plaintiffs.  *Id*. at ¶¶ 95-96.  Plaintiffs allege that Castle Marketing did not have any justification or privilege for the interference with Plaintiffs' contractual relationships.  *Id*. at ¶¶ 98, 114, 117.

Accepting the foregoing well-pled factual allegations as true solely for the purposes of this Motion, the undersigned finds that Castle Marketing tortiously interfered with Plaintiffs' contractual relationships.  Therefore, the undersigned finds the Plaintiffs are entitled default final judgment against Castle Marketing as to Count 1 of the Complaint.

### b.  Count 2 – Civil Conspiracy

A civil conspiracy claim requires: (1) an agreement between two or more parties, (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in furtherance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy.  Doc. 83 at 6-7 (citing *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1159-60 (Fla. 3d DCA 2008)).  Plaintiffs argue that the well-pled factual allegations in the Complaint establish that an agreement existed between Castle Marketing and the other Defendants to unlawfully interfere with Plaintiffs' contractual relationships.  Doc. 277 at 14.  The undersigned agrees.

In the Complaint, Plaintiffs allege that Castle Marketing and Defendants conspired to interfere with Plaintiffs' contractual relationships.  Doc. 223 at ¶¶ 121-25. Plaintiffs allege that Castle Marketing is part of "the Castle Law Group enterprise," which Plaintiffs allege is "a fake law firm designed to mislead unsuspecting responders to believe they are engaging a real law firm to assist them and not a counterfeit one whose function is to conceal the unlicensed practice of law by untrained nonlawyers."  *Id.* at ¶ 26.  Plaintiffs allege that this enterprise "solicits timeshare owners using false and misleading advertising starting with false promises to cancel their timeshare purchases, the end result of which is to tortiously interfere with Plaintiffs' existing contracts and advantageous business relationships with its owners."  *Id.*

Plaintiffs specifically allege that Castle Marketing runs and orchestrates marketing campaigns to solicit timeshare owners through fraudulent, unfair, and deceptive means.  *Id.* at ¶ 31.  Additionally, Plaintiffs allege that Castle Marketing, on behalf of Castle Law, retained Resort Relief to intentionally use false and misleading advertising as part of a scheme to induce Plaintiffs' clients into paying large upfront fees to retain Castle Law for the purpose of exiting the clients'

timeshare agreements with Plaintiffs.  *Id*. at ¶¶ 26, 30-31, 42-47, 61-63, 66-67, 69, 71-77, 79-81, 88-89, 93, 95-97, 124-128.   Then, Castle Law, without prior investigation or any legitimate grounds for doing so, instructed Plaintiffs' clients to stop making their mortgage, maintenance, and tax payments owed to Plaintiffs.  *Id*. at ¶¶ 46, 81, 97.  Plaintiffs allege that as a result of Castle Marketing's actions, Plaintiffs' clients have terminated, or have sought to terminate, their contractual relationships with Plaintiffs, thereby damaging Plaintiffs.  *Id*. at ¶¶ 95-96, 128.  Plaintiffs allege that Defendants did not have any justification or privilege for the interference with Plaintiffs' contractual relationships.  *Id*. at ¶¶ 98, 127.

Accepting the foregoing well-pled factual allegations as true solely for the purposes of this Motion, the undersigned finds that Castle Marketing engaged in a conspiracy to tortiously interfere with Plaintiffs' contractual relationships.  Therefore, the undersigned finds Plaintiffs are entitled default final judgment against Castle Marketing as to Count 2 of the Complaint.

### c.  Count 3 – Violation of Florida's Deceptive and Unfair Trade Practices Act

FDUTPA provides, in pertinent part, that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  Doc. 177 at 9 (quoting Fla. Stat. § 501.204(1)).  "Trade or commerce" is defined as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated."  *Id*. (quoting Fla. Stat. § 501.203(8)).  A claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.  *Id*. (citing *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 167 (Fla. 4th DCA 2015)).  Plaintiffs argue that the well-pled factual allegations in the Complaint establish that Castle

Marketing violated FDUTPA through unfair methods of competition, unconscionable acts and practices, and unfair and deceptive practices in the conduct of trade or commerce that caused Plaintiffs damages.  Doc. 277 at 14-17.  The undersigned agrees.

As previously discussed, Plaintiffs allege in the Complaint that Castle Marketing intentionally used false and misleading advertising to induce Plaintiffs' clients into paying large upfront fees to retain Castle Law for the purpose of exiting their timeshare agreements with Plaintiffs; that Castle Law, without prior investigation or any legitimate grounds for doing so, instructed Plaintiffs' clients to stop making their mortgage, maintenance, and tax payments owed to Plaintiffs; that as a result of Castle Marketing's actions, Plaintiffs' clients have terminated, or have sought to terminate, their contractual relationships with Plaintiffs, thereby damaging Plaintiffs; that Plaintiffs' clients were placed into default as a result of Castle Marketing's actions; and that Castle Marketing did not have any justification or privilege for the interference with Plaintiffs' contractual relationships.  Doc. 223 at ¶¶ 26, 30-31, 42-46, 61-63, 66-67, 69, 71-77, 79-81, 88-89, 93, 95-97, 138, 144, 146.  Given the foregoing well-pled factual allegations, which the undersigned must accept as true solely for the purposes of this Motion, the undersigned finds that Castle Marketing was engaged in trade or commerce, engaged in deceptive acts or unfair practices, and caused actual damages to Plaintiffs.  *See Al Amjad Ltd. v. Ocean Marine Engines, LLC*, 2017 WL 1365580, at *4 (M.D. Fla. Apr. 14, 2017) (stating that "[a]n act or practice is deceptive if likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment" and is unfair "if it causes consumer injury that is substantial, not outweighed by any countervailing benefits to consumers or competition, and one that consumers themselves could not have reasonably avoided") (citation and internal quotations omitted).  The undersigned notes that this Court has previously found that FDUTPA protections are not limited to consumers.  Docs. 83

at 7; 177 at 10-11; *see also, e.g.*, *Gov't Employees Ins. Co. v. Clear Vision Windshield Repair, L.L.C.*, 2017 WL 1196438, at *3 (M.D. Fla. Mar. 29, 2017) (noting that the Florida legislature broadened FDUTPA to give standing to any person affected by a violation of FDUTPA and capable of proving the remaining elements of the claim) (citations omitted).

Accepting the foregoing well-pled factual allegations as true solely for the purposes of this Motion, the undersigned finds that Castle Marketing violated FDUTPA. Therefore, the undersigned finds that Plaintiffs are entitled to default final judgment against Castle Marketing as to Count 3 of the Complaint.

### d. Count 5 – Contributory False Advertising and Under the Lanham Act

To state a contributory false advertising claim under 15 U.S.C. § 1125(a) against a defendant, a plaintiff must adequately allege two elements. First the plaintiff must allege that "a third party . . . directly engaged in false advertising that injured the plaintiff." Second, the plaintiff must allege that the "the defendant contributed to that conduct." *Duty Free Americas*, 797 F.3d at 1277. The second element requires the plaintiff to assert that the defendant: (1) "had the necessary state of mind — in other words that it 'intended to participate in' or actually knew about' the false advertising"; and (2) "actively and materially furthered the unlawful conduct — either by inducing it, causing it, or in some other way working to bring it about[,]" such as through the "provision of a necessary product or service, without which the false advertising would not be possible." *Id.* at 1277 (citing *Inwood Laboratories, Inc. v. Ives Laboratories*, Inc., 456 U.S. 844 (1982)).

As to the first element, the Court has already determined that Plaintiffs' allegations against Resort Relief, if taken as true, establish that Resort Relief violated the Lanham Act. Doc. 275 at 12; *see also* Doc. 276. The Court adopted the Report recommending the Court enter final default judgment against Resort Relief. Doc. 276. The Report stated:

> Plaintiffs' well-pled factual allegations establish that Resort Relief engaged in commercial advertising and promotion that misrepresented the nature of Resort Relief's and Castle Law's commercial activities to Plaintiffs' detriment. Further, Plaintiffs' adequately allege that Resort Relief's statements were false or misleading; that Resort Relief's statements deceived or had the capacity to deceive Plaintiffs' clients; that the deception had a material effect on Plaintiffs' clients' decision to retain Resort Relief and Castle Law; that the misrepresentations affected interstate commerce, and that Plaintiffs have been injured as a result of Resort Relief's false or misleading statements.

Doc. 275 at 12-13 (citing Doc. 223 at ¶¶ 156-171; *Orange Lake Country Club*, 2018 WL 5279135, at *8- 10 (denying in part the defendants' motion to dismiss the plaintiffs' Lanham Act claim in a similar case and noting that the plaintiffs' similar allegations in that case sufficiently alleged injuries flowing directly from the defendants' statements); *Westgate Resorts*, 2018 WL 5279156, at *8-10 (similar)).   Accordingly, the undersigned finds that Plaintiffs have satisfied the first element.

As to the second element, Plaintiffs allege that Castle Marketing knowingly and intentionally participated in the false advertising. Doc. 223 at ¶¶ 175-195.  Specifically, Plaintiffs allege that Castle Marketing controlled and monitored the false advertising disseminated by Castle Law and Resort Relief because Castle Marketing controls Castle Law's marketing and advertising activities and also delineates what Resort Relief is allowed to market and advertise.  *Id.* at ¶ 175. Plaintiffs also allege that Castle Marketing entered into an agreement with Resort Relief "whereby it supervised, approved, and controlled Resort Relief's marketing with respect to the solicitation of clients for Castle Law's purported timeshare relief services."  *Id.* at ¶ 179.   Additionally, Plaintiffs allege that Castle Law and Resort Relief disseminated false and misleading statements that ultimately caused injury to Plaintiffs by causing timeshare owners to cease making payments to Plaintiffs, and that Castle Marketing induced, caused, and contributed to the dissemination of these statements.  *Id.* at ¶ 188-92.  Further, Plaintiffs allege that Castle Marketing was directly responsible for the dissemination of the misrepresentations made by Resort Relief and Castle Law,

thereby damaging Plaintiffs' commercial and reputational interests. *Id.* at ¶¶ 193-94.   The undersigned therefore finds that Plaintiffs have satisfied the second element.

Accepting the foregoing well-pled factual allegations as true solely for the purposes of this Motion, the undersigned finds that Castle Marketing violated the Lanham Act.  Therefore, the undersigned finds that Plaintiffs are entitled to default final judgment against Castle Marketing as to Count 5 of the Complaint.

### E.   Relief

Plaintiffs ask the Court to enter a permanent injunction and award attorney fees and costs. The undersigned will address each in turn.  The undersigned notes that Plaintiffs have not sought damages and, thus, have waived any right they may have had to damages against Castle Marketing in this case.

### a.   Permanent Injunction

In the Motion, Plaintiffs explain that the Complaint seeks permanent injunctive relief pursuant to Plaintiffs' claims for violations of FDUTPA, the Lanham Act, as well as other state law claims.  Doc. 277 at 18.  Plaintiffs state that here, they limit the basis of their request for a permanent injunction solely to their FDUTPA claim.  *Id.*

Under FDUTPA, there is no requirement that a plaintiff show an ongoing practice or irreparable harm to obtain injunctive relief.  *See* Fla. Stat. § 501.211(1). The statute clearly provides that "anyone aggrieved by a violation of [FDUTPA] may bring an action . . . to enjoin a person who has violated, is violating, or is otherwise likely to violate [the] [statute]." Fla. Stat. § 501.211(1) (emphasis added); *see Synergy Billing, LLC v. Priority Mgmt. Grp., Inc.*, No. 6:17-CV-00929-ORL-31-DCI, 2017 WL 4922203, *9 (M.D. Fla. Oct. 31, 2017) (Presnell, J.).  Having found that Plaintiffs' well-pled allegations establish a violation of FDUTPA, the undersigned

finds that Plaintiffs are entitled by statute to seek an injunction. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975) (stating that a defendant is considered to have admitted a plaintiff's well-pled facts by virtue of default).

In the Motion and the proposed order attached thereto, Plaintiffs ask the Court for specific injunctive relief based solely on their FDUPTA claim.  *See* Docs. 277 at 18-20; 277-2 at 1-2. Plaintiffs ask the Court to enjoin Castle Marketing from the following:

   a.  Disseminating false and misleading advertising to Orange Lake Owners regarding any product, service, plan, or program represented, expressly or by implication, to rescind or terminate a timeshare owner's timeshare interest, promissory note, mortgage, mortgage payments, maintenance fees, and any related contracts to individuals having timeshare interests or contracts with any of the Plaintiffs;

   b.  interfering or assisting others in their interference with Plaintiffs' contractual relationships; or

   c.  engaging in false advertising and/or deceptive, misleading, and unfair trade practices relating to Plaintiffs.

*See* Doc. 277-2 at 1-2.  Plaintiffs also ask that Castle Marketing, in sum, be ordered to take down and destroy any false material relating to Plaintiffs, be ordered to report its compliance with the foregoing and file such a report with the Court and serve it upon Plaintiffs, and be ordered to post a copy of the injunction on its websites.  *Id.*  at ¶¶ 4-6.  However, such relief is not consistent with the relief Plaintiffs request in the Complaint as to the FDUPTA claim.  *Compare* Doc. 223 at 40-41 *with* Doc. 277-2.

Rather, in the Complaint, Plaintiffs make only a general request for injunctive relief pursuant to their FDUTPA claim and do not suggest any specific provisions.  See Doc. 223 at 35-41.  Because the Complaint does not specifically delineate injunctive provisions, the undersigned finds the broad prohibitions set forth in the Motion and the proposed order attached thereto inappropriate.   The undersigned cannot recommend granting relief on default that was not

requested in the Complaint.  *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").  However, Plaintiffs did request injunctive relief in the Complaint.   Based on that request, the undersigned respectfully recommends Resort Relief be enjoined pursuant to a limited version of Plaintiffs' subsection (a) in the proposed order. *See* Doc. 277-2.  But, as written, subsection (a) is unclear.  Thus, the undersigned recommends that the following text be struck from subsection (a): "to individuals having timeshare interests or contracts with any of the Plaintiffs and any relief granted by the Court," and that an injunction be entered against Castle Marketing according to the remainder of subsection (a).  In addition, the undersigned finds that the proposed injunction is overbroad to the extent it could be read to enjoin the independent actions of non-parties to this case.  The Court should not enjoin the independent actions of non-parties based upon the agreement of the parties here.  So, to clarify this limitation within the preliminary injunction, the Court should limit the injunctions applicability to Castle Marketing and any of its agents (including independent contractors and local counsel) to the extent those persons are acting as agents or otherwise at the direction of Castle Marketing.  *See Westgate Resorts et al. v. Sussman et al.*, 6:17-cv-1467-Orl-37DCI at Doc. 198 (M.D. Fla. Feb. 19, 2019) (adopting a Report recommending a similar limitation to an injunction in a similar case).

### b.  Attorney Fees and Costs

Plaintiffs seek an award of attorney fees and costs totaling $9,310.70.  Doc. 277 at 20.  For the reasons set forth in the paragraphs that follow, the undersigned respectfully recommends that the Court award Plaintiffs attorney fees in the amount of $8,845.70 and costs in the amount of $400.00.

### i.  Entitlement to an Award of Attorney Fees

Plaintiffs claim entitlement to attorney fees and costs pursuant to FDUTPA.[5]  Doc. 277 at 20-21.  Under FDUTPA, a plaintiff may recover "attorney's fees and court costs as provided in [section] 501.2105," which provides that "[i]n any civil litigation resulting from an act or practice involving a violation of this part, except as provided in subsection (5), the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party."  Fla. Stat. §§ 501.211(2), 501.2105(1).  Here, Plaintiffs are the prevailing party in a civil litigation resulting from an act or practice involving a violation of FDUTPA.  Therefore, the undersigned finds that Plaintiffs are entitled to their reasonable attorney fees and costs pursuant to FDUTPA.

   ii.   *Amount of Attorney Fees*

The Court uses the familiar "lodestar" method in determining a reasonable fee award, which is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The party moving for fees has the burden of establishing that the hourly rates and hours expended are reasonable.  *See Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

As for the hours reasonably expended, counsel must exercise proper "billing judgment" and exclude hours that are "excessive, redundant, or otherwise unnecessary."  *Hensley*, 461 U.S. at 434.  In demonstrating that their hours are reasonable, counsel "should have maintained records to show the time spent on the different claims, and the general subject matter of the time

---

[5] Plaintiffs also claim entitlement to attorney fees and costs pursuant to the Lanham Act, which provides for an award of attorney fees in "exceptional cases."  Doc. 277 at 220; 15 U.S.C. § 1117(a); *Hong Tran v. Thu Thi Dinh*, 2012 WL 13136863, at *7-8 (M.D. Fla. Jan. 5, 2012) (discussing the standard for awarding attorney fees under the Lanham Act), *report and recommendation adopted*, 2012 WL 13137052 (M.D. Fla. Jan. 26, 2010).  But the undersigned need not address whether this was an "exceptional case" under the Lanham Act because, as will be discussed, Plaintiffs are entitled to attorney fees pursuant to FDUTPA.

expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303.  Likewise, a party opposing a fee application should also submit objections and proof that are specific and reasonably precise. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).  A fee opponent's failure to explain with specificity the particular hours viewed as "unnecessary or duplicative" is generally fatal. *Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1333 (M.D. Fla. 2002) (citing *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387 (11th Cir. 1997)).  "If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary." *Barnes*, 168 F.3d at 428 (quotations omitted).  But in cases where the fee motion and supporting documents are voluminous, an hour-by-hour analysis by the court is not required, and the court may apply across-the-board percentage cuts in the number of hours so long as the court provides a concise but clear explanation of its reasons for the reduction.  *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994).  There is a strong presumption that the lodestar figure is reasonable.  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010).

    1. *Reasonably Hourly Rate*

Plaintiffs seek the following hourly rates for the attorneys that spent time on this case: $425 for Richard W. Epstein; $400 for Jeffrey A. Backman; $350 for Roy Taub; $350 for Kathryn G. Saft; $300 for Christina Guzman; and $275 for Thu Pham.  Doc. 278 at 7.  The Court has already found those hourly rates to be reasonable in this case and thus finds them reasonable here as well.  *See* Doc. 275 at 22.  The undersigned notes that the foregoing hourly rates are similar to what was awarded in a similar case.  *See Orange Lake Country Club, Inc. v. Reed Hein & Assocs., LLC*, 6:17-cv-1542-Orl-31DCI, Docs. 110; 145; 212; 228.

2.  *Hours Expended*

Given that this case involved multiple Defendants, and, thus, that not all hours expended in this case were expended in relation to Castle Marketing, Plaintiffs only seek to recover the hours Plaintiffs' counsel spent on specific tasks.   Specifically, Plaintiffs seek to recover the hours Plaintiffs' counsel spent on the following tasks: (1) performing preliminary research, drafting the initial complaint, conducting initial discovery, and communicating with Plaintiffs' affected owners; (2) reviewing the Court's order to dismiss the second amended complaint and drafting the third amended complaint; (3) drafting the fourth amended complaint; (4) preparing for and attending mediation; (5) attempting  to serve Castle Marketing, drafting a motion to deem Castle Marketing served, and drafting two motions to obtain entry of default.  Doc. 278 at 2-7.  Further, because some of the foregoing tasks related to all Defendants and not just Castle Marketing, Plaintiffs only seek to recover 12.5 percent of the time Plaintiffs' counsel spent on tasks not solely related to Castle Marketing.

The undersigned has reviewed the time that Plaintiffs seek to recover and finds that the hours requested are reasonable.  The undersigned calculates a lodestar of $8,856.50 as follows:

|  | Rate | Hours |  |  |
|---|---|---|---|---|
| Richard W. Epstein | $425.00 | 1.95 |  | $828.75 |
| Jeffrey A. Backman | $400.00 | 4.31 |  | $1,724.00 |
| Roy Taub | $350.00 | 11.93 |  | $ 4,175.50 |
| Kathryn G. Saft | $350.00 | 0.38 |  | $133.00 |
| Christina Guzman | $300.00 | 2.70 |  | $810.00 |
| Thu Pham | $275.00 | 4.31 |  | $1,185.25 |
|  |  |  | **Total:** | **$8,856.50** |

However, Plaintiffs seek an award of attorney fees totaling $8,845.70.  Doc. 277 at 20.  Based on the lodestar calculated above, the undersigned finds that an award of $8,845.70 is a reasonable fee award in this case.

### iii.   *Costs*

Plaintiffs seek to recover $465.00 in costs: $400.00 for the filing fee, $65.00 for service of process on Castle Marketing.  Doc. 277 at 20; Doc. 278 at 7.  In support of their request, Plaintiffs attached to Mr. Taub's declaration a copy of the check used to pay the filing fee and the invoices for service of process upon Resort Relief and Castle Law.  Doc. 278-2.

Federal Rule of Civil Procedure 54(d)(1) allows for an award of costs for a prevailing party unless a federal statute, the Federal Rules of Civil Procedure, or a court order provides otherwise. *See Durden v. Citicorp Trust Bank, FSB*, Case No. 3:07-cv-974-J-34JRK, 2010 WL 2105921, at *1 (M.D. Fla. Apr. 26, 2010) (stating that Rule 54 establishes a presumption that costs should be awarded unless the district court decides otherwise) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1038 (11th Cir. 2000)).  Generally, a district court may not award costs under Rule 54 "in excess of those permitted by Congress under 28 U.S.C. § 1920."  *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1225 (11th Cir. 2002) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987)).  The party seeking costs must provide sufficient detail and documentation regarding the requested costs so that the opposing party may challenge the costs and so the court may conduct a meaningful review of the costs.  *Lee v. Am. Eagle Airlines, Inc.*, 93 F. Supp. 2d 1322, 1335-36 (S.D. Fla. 2000).  Failure to provide sufficient detail or supporting documentation verifying the costs incurred and the services rendered can be grounds for denial of costs.  *Pelc v. Nowak*, Case No. 8:11-cv-79-T-17TGW, 2013 WL 3771233, at *5 (M.D. Fla. July 17, 2013) (citing *Johnson v. Mortham*, 173 F.R.D. 313, 318 (N.D. Fla. 1997)).

The undersigned finds that Plaintiffs provided sufficient supporting documentation to verify their costs with respect to the filing fee, and that those costs are permitted under 28 U.S.C. § 1920. However, Plaintiffs have not provided sufficient supporting documentation to verify their costs with respect to service upon Castle Marketing. Plaintiffs have submitted invoices for service of process upon Resort Relief and Castle Law; Plaintiffs failed to provide any invoice related to service upon Castle Marketing. *See* Doc. 278-2. Accordingly, the undersigned finds that the requested costs for service upon Castle Marketing are due to be denied. *See Pelc v. Nowak*, 2013 WL 3771233 at *5.

Given the foregoing, the undersigned finds that costs should be taxed against Castle Marketing in the amount of $400.00.

### IV. Conclusion

Accordingly, it is respectfully **RECOMMENDED** that:

1. The Motion (Doc. 277) be **GRANTED in part**;

2. The Court enter final default judgment in favor of Plaintiffs and against Castle Marketing on Counts 1, 2, 3, and 5 of the Fourth Amended Complaint (Doc. 223);

3. The Court award Plaintiffs $8,845.70 in attorney fees and $400.00 in costs against Castle Marketing;

4. If this Recommendation is adopted, the Court enter an order enjoining Castle Marketing, and any of its agents (including independent contractors and local counsel) to the extent those persons are acting as agents or otherwise at the direction of Castle Marketing, from disseminating false and misleading advertising to Orange Lake

Owners[6] regarding any product, service, plan, or program represented, expressly or by implication, to rescind or terminate a timeshare owner's timeshare interest, promissory note, mortgage, mortgage payments, maintenance fees.

5. The Motion (Doc. 277) otherwise be **DENIED**.

6. The Clerk be directed to close the case.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on December 13, 2019.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy

---

[6] The Complaint defines "Orange Lake Owners" as "owners of timeshare interests with Orange Lake." Doc. 223 at 4.